1  LANCE A. ETCHEVERRY (SBN 199916)
   lance.etcheverry@skadden.com
2  JOHN M. NEUKOM (SBN 275887)
   john.neukom@skadden.com
3  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   525 University Avenue, Suite 1400
4  Palo Alto, California 94301
   Telephone:    (650) 470-4500
5  Facsimile:    (650) 470-4570

6  ABRAHAM A. TABAIE (SBN 260727)
   abraham.tabaie@skadden.com
7  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue, Suite 3400
8  Los Angeles, California 90071
   Telephone:    (213) 687-5000
9  Facsimile:    (213) 687-5600

10 Attorneys for Defendant
   RANKWAVE CO., LTD.

11

12              **UNITED STATES DISTRICT COURT**

13        **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

14                 **SAN FRANCISCO DIVISION**

15 FACEBOOK, INC., a Delaware corporation,   | CASE NO.: 3:19-cv-03738

16                            Plaintiff,      | **(A) RANKWAVE CO., LTD.'S NOTICE OF
                                              | MOTION AND MOTION TO DISMISS FOR
17            v.                              | LACK OF PERSONAL JURISDICTION OR
                                              | INCONVENIENT FORUM, OR, IN THE
18 RANKWAVE CO., LTD., a South Korean         | ALTERNATIVE, TO DISMISS
   corporation,                              | FACEBOOK'S UCL CLAIM;
19
                            Defendant.        | **(B) DECLARATION OF CHANG KYU PARK;
20
                                              | **(C) DECLARATION OF ABRAHAM A.
21                                            | TABAIE;
22                                            | **(D) DECLARATION OF HYUNGSOO KIM;
                                              | and
23
                                              | **(E) [PROPOSED] ORDER.
24
                                              | Date:   September 18, 2019
25                                            | Time:  2:00 p.m.
                                              | Location: Oakland, Courtroom 6, 2nd Floor
26                                            | Judge:  Honorable Jon S. Tigar
27                                            | Complaint Filed: May 10, 2019
                                              | Complaint Removed: June 27, 2019
28

1

**TABLE OF CONTENTS**

2

**PAGE**

3   TABLE OF AUTHORITIES .................................................................................. iii

4   NOTICE OF MOTION AND MOTION ................................................................ 1

5   INTRODUCTION ................................................................................................. 2

6   BACKGROUND .................................................................................................... 4

7       I.      FACEBOOK'S ALLEGATIONS ................................................... 4

8       II.     RELEVANT FACEBOOK TOS AND COMMERCIAL TERMS

9                 PROVISIONS ................................................................................. 5

10              A.     Facebook's Current TOS (April 19, 2018 – Present) ................... 5

11              B.     Facebook's TOS Immediately Prior to April 19, 2018 .............. 6

12              C.     Facebook's Current Commercial Terms .................................... 7

13      III.    RANKWAVE'S LACK OF ANY MEANINGFUL CONTACTS WITH
                  CALIFORNIA ................................................................................ 7

14  ARGUMENT .......................................................................................................... 9

15      I.      THE COURT LACKS PERSONAL JURISDICTION OVER RANKWAVE ...... 9

16              A.     Facebook Has the Burden of Establishing Personal Jurisdiction ................ 9

17              B.     Facebook Cannot Establish Personal Jurisdiction Over Rankwave ........... 9

18                   1.     Rankwave Is Not Subject to General Jurisdiction in California ..... 9

19                   2.     Rankwave Is Not Subject to Specific Jurisdiction in

20                       California ................................................................................ 10

21                       (a)    Facebook Cannot Establish That Rankwave
                                  Purposefully Availed Itself of the Forum State of

22                                California ............................................................. 11

23                       (b)    Facebook's Claims Do Not Arise out of or Relate to
                                  Any California-Related Activities by Rankwave ............. 13

24                       (c)    Jurisdiction Over RankWave in California Would Be
                                  Unreasonable ...................................................... 14

25                   3.     The Forum Selection Clause in Facebook's Current TOS Is

26                       Inapplicable ............................................................................. 16

27      II.    CALIFORNIA IS NOT A CONVENIENT FORUM FOR THIS ACTION ......... 19

28              A.     South Korea Is an Adequate Alternative Forum ........................ 19

i

1

        B.     All Relevant Convenience Factors Favor Litigation in South Korea ........20

2             1.     The Private Interest Factors Favor Dismissal ...............................21

3             2.     The Public Interest Factors Favor Dismissal ...............................22

4    III.     FACEBOOK FAILS TO STATE A UCL CLAIM ................................................23

5        A.     Standard of Review........................................................................23

6        B.     Facebook Fails to State a Claim Under the UCL............................24

7             1.     Facebook Fails to Allege Unlawful Conduct................................24

8             2.     Facebook Fails to Allege Unfair Conduct ....................................24

9             3.     Facebook Fails to Allege Fraud ....................................................25

10            4.     Facebook Fails to Allege Its Own Reliance...................................25

11  CONCLUSION......................................................................................................................25

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**PAGE(S)**

3

4

### CASES

5
*180Squared, Inc. v. Allo Twin Cities LLC*,
    No. C 12-4951 PJH, 2013 WL 12146129 (N.D. Cal. Jan. 18, 2013) ................................... 12

6
*In re Air Crash Over Mid-Atlantic on June 1, 2009*,
7
    760 F. Supp. 2d 832 (N.D. Cal. 2010) ......................................................................... 21, 22

8
*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................................... 23

9
*Axiom Foods, Inc. v. Acerchem International, Inc.*,
    874 F.3d 1064 (9th Cir. 2017) ........................................................................................ 13
10

11
*Baba v. Hewlett-Packard Co.*,
    No. C 09-05946 RS, 2010 WL 2486353 (N.D. Cal. June 16, 2010) ................................. 24

12
*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).......................................................................................................... 23
13

14
*Boland, Inc. v. Rolf C. Hagen (USA) Corp.*,
    685 F. Supp. 2d 1094 (E.D. Cal. 2010)............................................................................ 24

15
*Butcher's Union Local No. 498 v. SDC Investment, Inc.*,
    788 F.2d 535 (9th Cir. 1986) ........................................................................................... 11
16

17
*Capri Trading Corp. v. Bank Bumiputra Malaysia Berhad*,
    812 F. Supp. 1041 (N.D. Cal. 1993) ................................................................................ 23

18
*Cel-Tech Communications, Inc. v. L.A. Cellular Telephone Co.*,
    20 Cal. 4th 163 (1999) ..................................................................................................... 24
19

20
*Cheng v. Boeing Co.*,
    708 F.2d 1406 (9th Cir. 1983) ......................................................................................... 20

21
*Contact Lumber Co. v. P.T. Moges Shipping Co.*,
    918 F.2d 1446 (9th Cir. 1990) ......................................................................................... 20
22

23
*Cook v. Champion Tankers AS*,
    No. 12-cv-01965-JST, 2013 WL 1629136 (N.D. Cal. Apr. 16, 2013) .............................. 22

24
*Core-Vent Corp. v. Nobel Industries AB*,
    11 F.3d 1482 (9th Cir. 1993), *overruled in part on other grounds en banc per*
25
    *curiam by Yahoo! Inc. v. La Ligue Contre le Racisme et L'Antisemitisme*, 433 F.3d
    1199 (9th Cir. 2006)................................................................................... 14, 15, 16
26

27
*Coto Settlement v. Eisenberg*,
    593 F.3d 1031 (9th Cir. 2010) ........................................................................................... 5

28

*Daimler AG v. Bauman,*
    571 U.S. 117 (2014) ................................................................................ 3, 9, 10

*Doe 1 v. AOL LLC,*
    552 F.3d 1077 (9th Cir. 2009) ...................................................................... 17

*Duffy v. Facebook, Inc.,*
    No. 16-cv-06764-JSC, 2017 WL 1739109 (N.D. Cal. May 4, 2017) ................... 23

*Elias v. Hewlett-Packard Co.,*
    903 F. Supp. 2d 843 (N.D. Cal. 2012) ............................................................ 25

*Erickson v. Nebraska Machinery Co.,*
    No. 15-cv-01147-JD, 2015 WL 4089849 (N.D. Cal. July 6, 2015) ...................... 6

*Filtrexx International, LLC v. Truelsen,*
    No. 5:12cv58, 2013 WL 587582 (N.D. Ohio Feb. 13, 2013) ....................... 17, 18

*Gutierrez v. Givens,*
    989 F. Supp. 1033 (S.D. Cal. 1997) ............................................................... 11

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
    466 U.S. 408 (1984) .................................................................................... 10

*Honshu Shipping Co., Ltd. v. M/V Trade Zale,*
    No. C 04-1481 VRW, 2005 WL 3676097 (N.D. Cal. Apr. 28, 2005) .................. 20

*Hyundai Securities Co. v. Lee,*
    232 Cal. App. 4th 1379 (2015) ..................................................................... 22

*Kellman v. Whole Foods Market, Inc.,*
    313 F. Supp. 3d 1031 (N.D. Cal. 2018) ....................................................... 9, 10

*L.A. Taxi Cooperative, Inc. v. Uber Technologies, Inc.,*
    114 F. Supp. 3d 852 (N.D. Cal. 2015) ........................................................... 25

*Lockman Foundation v. Evangelical Alliance Mission,*
    930 F.2d 764 (9th Cir. 1991) .............................................................. 19, 20, 21

*Lou v. Belzberg,*
    834 F.2d 730 (9th Cir. 1987) ........................................................................ 20

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.,*
    583 F.3d 656 (9th Cir. 2009) ........................................................................ 20

*Lueck v. Sundstrand Corp.,*
    236 F.3d 1137 (9th Cir. 2001) ............................................................ 19, 21, 22

*Manetti-Farrow, Inc. v. Gucci America, Inc.,*
    858 F.2d 509 (9th Cir. 1988) ........................................................................ 16

*Martinez v. Aero Caribbean,*
    764 F.3d 1062 (9th Cir. 2014) ...................................................................... 10

iv

*Meyer v. Aabaco Small Business, LLC*,
    No. 5:17-cv-02102-EJD, 2018 WL 306688 (N.D. Cal. Jan. 5, 2018) ............................ 23, 24

*Minkler v. Apple, Inc.*,
    65 F. Supp. 3d 810 (N.D. Cal. 2014) ................................................................................. 25

*Nibirutech Ltd. v. Jang*,
    No. C 14-3091 PJH, 2015 WL 831465 (N.D. Cal. Feb. 23, 2015) ................................. 22, 23

*Nimbus Data Systems, Inc. v. Modus LLC*,
    No. 14-cv-04192 NC, 2014 WL 7387200 (N.D. Cal. Dec. 29, 2014) ................................ 14

*Picot v. Weston*,
    780 F.3d 1206 (9th Cir. 2015) ........................................................... 9, 11, 12, 14

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) ........................................................................ 4, 19, 21

*Polar Shipping Ltd. v. Oriental Shipping Corp.*,
    680 F.2d 627 (9th Cir. 1982) ...................................................................... 16

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) ..................................................................... 10

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ................................................................... 9, 11

*Singh v. Google Inc.*,
    No. 16-cv-03734-BLF, 2017 WL 2404986 (N.D. Cal. June 2, 2017) ................................ 24

*Stewart v. Screen Gems-EMI Music, Inc.*,
    81 F. Supp. 3d 938 (N.D. Cal. 2015) ................................................................... 5

*Suarez v. Bank of America Corp.*,
    No. 18-cv-01202-MEJ, 2018 WL 2431473 (N.D. Cal. May 30, 2018) ............................... 24

*Terra Tech Corp. v. Vandevrede*,
    No. SACV 18-602 JVS (JDEx), 2018 WL 6016162 (C.D. Cal. Aug. 3, 2018) ........ 16, 18, 19

*Ting v. AT&T*,
    319 F.3d 1126 (9th Cir. 2003) .................................................................... 19

*UCAR Technology (USA) Inc. v. Yan Li*,
    No. 5:17-cv-01704-EJD, 2018 WL 2555429 (N.D. Cal. June 4, 2018) .............................. 24

*Vivendi SA v. T-Mobile USA Inc.*,
    586 F.3d 689 (9th Cir. 2009) ..................................................................... 21

*Walden v. Fiore*,
    571 U.S. 277 (2014) ............................................................................ 13

*Yang v. M/V Minas Leo*,
    1994 WL 36921 (N.D. Cal. Jan. 25, 1994), *aff'd mem.*, 76 F.3d 391 (9th Cir. 1996) .......... 20

**STATUTES**

Cal. Bus. & Prof. Code § 17200 ................................................. 1, 24

Cal. Civ. Proc. Code § 1716(a) ...................................................... 22

**OTHER AUTHORITIES**

Alana Abramson, *Here's What We Learned From the Ads Bought by Russian Trolls in 2016*, Time (May 10, 2018), https://time.com/5272638/russia-facebook-instagram-ads-2016-election/ ............... 4

Gabriel J.X. Dance, Nicholas Confessore, & Michael LaForgia, *Facebook Gave Device Makers Deep Access to Data on Users and Friends*, N.Y. Times (June 3, 2018), https://www.nytimes.com/interactive/2018/06/03/technology/facebook-device-partners-users-friends-data.html ................................................................................................... 4

Kevin Granville, *Facebook and Cambridge Analytica: What You Need to Know as Fallout Widens*, N.Y. Times (Mar. 19, 2018), https://www.nytimes.com/2018/03/19/technology/facebook-cambridge-analytica-explained.html ........................................................................ 2

David Z. Morris, *Facebook Employees Are Reportedly Deleting Controversial Internal Messages*, Fortune (Mar. 31, 2018), www.fortune.com/2018/03/31/facebook-employees-are-reportedly-deleting-controversial-internal-messages ................................................. 2

Paul Mozur, *A Genocide Incited on Facebook, With Posts From Myanmar's Military*, N.Y. Times (Oct. 15, 2018), https://www.nytimes.com/2018/10/15/technology/myanmar-facebook-genocide.html ................................................................................................... 4

Wonsik Yoon, et al. *Enforceability of Judgments in South Korea: Overview*, Thomson Reuters Practical Law (Sept. 1, 2015), https://us.practicallaw.thomsonreuters.com/5-619-0510 ............. 22

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on September 18, 2019, at 2:00 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Jon S. Tigar, United States District Judge, Northern District of California, located at 1301 Clay Street, Oakland, California 94612 in Courtroom 6 on the 2nd Floor, the undersigned Defendant Rankwave Co., Ltd. ("Rankwave") will and hereby does move the Court to: (1) dismiss the entire Complaint of Plaintiff Facebook, Inc. ("Facebook") for lack of personal jurisdiction, (2) dismiss or stay the entire Complaint on the ground of inconvenient forum, or (3) in the alternative, to dismiss Facebook's third claim alleging unlawful, unfair, or fraudulent business practices under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*. (the "UCL").

Rankwave's Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) and the Court's inherent authority to decline jurisdiction in favor of a more convenient forum. Rankwave is a South Korean company, lacking any meaningful contacts with California, and is not amenable to personal jurisdiction in California. Moreover, even if Rankwave were amenable to jurisdiction in this Court, this lawsuit's lack of ties to California and its numerous ties with South Korea makes South Korea a substantially more convenient forum for the parties and witnesses. Accordingly, the Court should dismiss this case in its entirety. Further, Facebook has failed to allege any unlawful, unfair, or fraudulent business practices, as those terms are used in the UCL, and therefore Facebook's UCL claim should be dismissed.

This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the Declaration of Chang Kyu Park in support thereof ("Park Decl."), the Declaration of Abraham A. Tabaie in support thereof ("Tabaie Decl."), the Declaration of Hyungsoo Kim in support thereof ("Kim Decl.), the files and pleadings in this action, the arguments of counsel, and any such other matters as the Court may consider.

## RELIEF REQUESTED

Rankwave respectfully requests that the Court enter an order dismissing Facebook's Complaint for lack of personal jurisdiction or for inconvenient forum, to stay for inconvenient forum, or, in the alternative, that Facebook's UCL claim be dismissed for failure to state a claim.

**INTRODUCTION**

To put it mildly, Facebook's privacy policies and its use of user data have drawn criticism from commentators and government regulators around the world. Such criticism was elevated to a fever pitch with widespread news coverage about Facebook's reported complicity in the misuse of user data in connection with "Cambridge Analytica" and foreign election interference in 2016, and the criticism continues to this day.[1]

In response, Facebook appears to be using this lawsuit to try to deflect attention from its own questionable conduct. Facing global criticism, Facebook has chosen to file suit in California against a small eight-person company that is incorporated only in South Korea, has an office only in South Korea, and offers products only in the Korean language, to try to shift the attention (if not blame) for its own privacy and user data usage woes. Even if this case were to proceed in this Court—it should not—Facebook's attempt to deflect attention and blame with this lawsuit will not work. That is because (*inter alia*), if this case proceeds, the evidence will show that on May 12, 2016, Facebook ***approved*** Rankwave's business operations in their totality, including the scope of Rankwave's data collection and how Rankwave used such data in its business. If, as Facebook now claims, Rankwave's conduct was somehow improper (it was not), Facebook will have to explain to a jury why it approved Rankwave's practices, after it investigated Rankwave's business model and use of data found on Facebook.

But this case should not reach the merits stage because this Court does not have personal jurisdiction over Rankwave. Facebook's jurisdictional allegations are vague and appear to parrot the legal standards, but lack specificity or accuracy. Rankwave is a small company, with no presence outside of South Korea, that offers products and services in the Korean language, directed

---

[1]     *See, e.g.*, Kevin Granville, *Facebook and Cambridge Analytica: What You Need to Know as Fallout Widens*, N.Y. TIMES (Mar. 19, 2018), https://www.nytimes.com/2018/03/19/technology /facebook-cambridge-analytica-explained.html (reporting that Cambridge Analytica gained access to Facebook user data, which played a part in the 2016 US presidential election); David Z. Morris, *Facebook Employees Are Reportedly Deleting Controversial Internal Messages*, FORTUNE (Mar. 31, 2018), www.fortune.com/2018/03/31/facebook-employees-are-reportedly-deleting-controversial -internal-messages (reporting on a leaked memo written by a Facebook VP who stated that "'connecting people' should be the company's driving goal, even if 'it costs someone a life by exposing someone to bullies' or 'someone dies in a terrorist attack coordinated on our tools'").

1    exclusively at South Korean consumers and businesses, with no meaningful contacts with
2    California.

3         Facebook's allegation that this Court has **general** jurisdiction over Rankwave is foreclosed
4    by established Supreme Court precedent. "With respect to a corporation, the place of incorporation
5    and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler AG v.*
6    *Bauman,* 571 U.S. 117, 137 (2014) (alterations in original). Rankwave is incorporated and has its
7    principal place of business in South Korea. Further, this cannot be an "exceptional case" in which
8    general jurisdiction would be proper in California for a company incorporated and located in South
9    Korea given that Rankwave has no California operations, let alone any that are "so substantial and
10   of such a nature as to render the corporation at home in [California]." *Id*. at 139 n.19.

11        Nor can Facebook point to any basis for the exercise of **specific** jurisdiction. Even if the
12   allegations in the Complaint were taken as true, allegedly agreeing to Facebook's Terms of Service
13   ("TOS") is insufficient to establish specific jurisdiction under Ninth Circuit precedent.[2] Further,
14   Rankwave never conducted business in California, never accepted monies from California, never
15   even spoke to Facebook employees in California, and, in fact, marketed all of its applications at
16   issue in this action ("apps") to the South Korean market alone. Facebook's reliance on a forum
17   selection clause ("FSC") in a TOS that it alleges Rankwave agreed to—even if accepted *arguendo*
18   as a contract binding on Rankwave—does not support personal jurisdiction over Rankwave in any
19   court located in California. By its own language, the FSC in Facebook's TOS that addresses
20   personal jurisdiction does not apply to the claims at issue in this suit, as such claims are brought by
21   Facebook against Rankwave, not Rankwave against Facebook.

22        For many of the same reasons that personal jurisdiction is improper, this lawsuit should be
23   dismissed or stayed on forum non conveniens grounds. Rankwave and all of the key witnesses and
24   documents in this action are located in South Korea, where all of the acts Facebook complains of
25   occurred, and over 99% of the potentially relevant Rankwave documents are in the Korean
26   language. In light of the centrality of South Korea to this lawsuit, the Court should dismiss this

27   _____
     [2]    Rankwave reserves the right to (and will) dispute Facebook's allegation that Rankwave was
28   bound by historic and current versions of the Facebook TOS (including historical versions in which
     Facebook, Inc., was not even a contracting party). *See* Compl. ¶ 19.

1  action so that the litigation can move to South Korea where it belongs. *See Piper Aircraft Co. v.*

2  *Reyno*, 454 U.S. 235 (1981).

3      In the alternative: Facebook's UCL claim should be dismissed. Facebook fails to allege ***any***

4  facts which, even if taken as true, could show that Rankwave's actions constitute unlawful, unfair,

5  or fraudulent acts or practices. First, breach of contract claims may not be the basis of an unlawful

6  act under the UCL, and Facebook does not allege the violation of any law. Second, Facebook has

7  not alleged an antitrust injury, or harm to competition, and thus cannot satisfy the unfair prong.

8  Lastly, Facebook has not alleged facts sufficient to meet the heightened pleading standards of

9  Federal Rule of Civil Procedure 9(b)—or anything close to it—such that it could satisfy the

10  fraudulent prong of the UCL.  Thus, the Court should dismiss Facebook's UCL claim.

11                                   **BACKGROUND**

12  **I.    FACEBOOK'S ALLEGATIONS**

13      The instant action arises out of Facebook's allegations that Rankwave breached Facebook's

14  TOS and Platform Policy by misusing user data gathered from the Facebook website to offer

15  advertising and marketing services to third parties, and thereafter failing to comply with Facebook's

16  request for proof of compliance. *See* Compl. ¶ 49. Facebook contends that Rankwave has harmed

17  Facebook's "reputation, public trust and goodwill."[3] *Id.* ¶ 41.

18      As to personal jurisdiction, in paragraphs 7-8 of its Complaint, Facebook asserts that this

19  Court has both general and specific personal jurisdiction over Rankwave:

20         7.  The Court has personal jurisdiction over Rankwave as a result of its

---

21  [3]    The idea that Rankwave is capable of materially harming the reputation of and public trust

22  placed in Facebook's handling of consumer data is difficult to countenance. Numerous reports by internationally respected news outlets have for years been questioning and/or criticizing Facebook's

23  policies and conduct in this area, writing about, among other things: (a) Facebook's role in allowing Russian interference in the 2016 US elections, (b) Facebook's secret agreements to sell its users'

24  data to third parties, and (c) Facebook's role in facilitating hate speech in Myanmar that has contributed to a genocide, among other scandals. *See, e.g.*, Alana Abramson, *Here's What We*

25  *Learned From the Ads Bought by Russian Trolls in 2016*, TIME (May 10, 2018), https://time.com/5272638/russia-facebook-instagram-ads-2016-election/; Gabriel J.X. Dance,

26  Nicholas Confessore, & Michael LaForgia, *Facebook Gave Device Makers Deep Access to Data on Users and Friends*, N.Y. TIMES (June 3, 2018),

27  https://www.nytimes.com/interactive/2018/06/03/technology/facebook-device-partners-users-friends-data.html; Paul Mozur, *A Genocide Incited on Facebook, with Posts from Myanmar's*

28  *Military*, N.Y. TIMES (Oct. 15, 2018), https://www.nytimes.com/2018/10/15/ technology/myanmar-facebook-genocide.html.

1
2
3

> substantial, continuous, and systematic contacts with the State of California; because it has purposely availed itself of the benefits and privileges of conducting business activities in California; and because the claims asserted in this Complaint arise from and relate to those actions Rankwave directed toward California, causing foreseeable harm and injuries within this State.

4
5
6

> 8.  The Court also has personal jurisdiction over Rankwave because Rankwave used the Facebook Platform and thereby agreed to Facebook's Terms of Service ("TOS"). By agreeing to the TOS, Rankwave, in relevant part, agreed to submit to the personal jurisdiction of this Court for litigating claims, causes of action, or disputes with Facebook.

7   *Id.* ¶¶ 7-8. Facebook alleges that "[a]t all relevant times [alleged to be between 2010 and 2019],

8   Rankwave . . . agreed to and was bound by [Facebook's] TOS." *Id.* ¶ 19; *see also id.* ¶ 20.

9   The totality of Facebook's UCL allegations are that: "Rankwave's action described above,

10   constitute [sic] unlawful, unfair, or fraudulent acts or practices in the conduct of business, in

11   violation of [the UCL], including actions that are forbidden by other state laws. Facebook suffered

12   damages as a result of these violations." *Id.* ¶¶ 58-59.

13   **II.     RELEVANT FACEBOOK TOS AND COMMERCIAL TERMS PROVISIONS**[4]

14   **A.     Facebook's Current TOS (April 19, 2018 – Present)**

15   According to Facebook's current TOS, it has been in effect since April 19, 2018. Tabaie

16   Decl. Ex. 1 ("Date of Last Revision: April 19th, 2018"). The current TOS purports to be between

17   Facebook, Inc. (the plaintiff in this action) and those who accept its terms. *Id.* Section 4.5.1. The

18   FSC in Facebook's current TOS states:

19
20
21
22

> ***For any claim***, cause of action, or dispute ***you have against us*** that arises out of or relates to these Terms or the Facebook Products ***('claim')***, you agree that it will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County. You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating ***any such claim***, and that the laws of the State of California will govern these Terms and any claim, without regard to the conflict of law provisions.[5]

23   Tabaie Decl. Ex. 1, Section 4.4.

24

---

25   [4]     The Court may consider extrinsic evidence when considering a motion to dismiss for lack of personal jurisdiction. *See Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 951 (N.D.

26   Cal. 2015). Further, the Court may consider materials incorporated by reference into the complaint. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). Facebook has relied on its

27   TOS to allege personal jurisdiction in this matter. *See* Compl. ¶ 8.

28   [5]     Unless otherwise noted, all emphases and alterations are added, and all citations and internal quotation marks are omitted from all quoted material.

Facebook's current TOS also states in Section 4.5.1 that "[t]hese Terms (formerly known as the Statement of Rights and Responsibilities) make up the entire agreement between you and Facebook, Inc. regarding your use of our Products. They supersede any prior agreements." Tabaie Decl. Ex. 1, Section 4.5.1. Finally, Facebook's current TOS states, "we need to store and distribute content and data in our data centers and systems throughout the world, including outside your country of residence. This infrastructure may be operated or controlled by Facebook, Inc., Facebook Ireland Limited, or its affiliates." Tabaie Decl. Ex. 1, Section 1.

**B.    Facebook's TOS Immediately Prior to April 19, 2018[6]**

According to Facebook, it made changes to its TOS in the spring of 2018, which were meant for clarity only, not to substantively change its terms.[7] Unlike the current TOS—which appears to identify Facebook, Inc., as the contracting party in all instances—the prior TOS explained that, for companies such as Rankwave, it was Facebook Ireland Limited (not a party to this action) that was the contracting party. Tabaie Decl. Ex. 2, Section 18.1 (providing that unless one's residence or principal place of business is in the US or Canada, then "this Statement is an agreement between you and Facebook Ireland Limited").

The FSC in Facebook's prior TOS reads:

> ***You will resolve any claim***, cause of action or dispute (claim) ***you have with us*** arising out of or relating to this Statement or Facebook exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County, and you agree to submit to the personal jurisdiction of such courts for the purpose of litigating ***all such claims***….

Tabaie Decl. Ex. 2, Section 15.1.

---

[6]    Facebook does not make prior versions of its TOS available on its website. However, "[c]ourts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Erickson v. Neb. Mach. Co.*, 2015 WL 4089849, at *1 n.1 (N.D. Cal. July 6, 2015). Here, the prior version of Facebook's TOS was obtained from the Wayback Machine, as explained in the Tabaie Declaration. The Court should consider the prior TOS as judicially noticeable or as evidence submitted on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2).

[7]    Tabaie Decl. Ex. 4 (Press Release, Facebook Newsroom, We're Making Our Terms and Data Policy Clearer, Without New Rights to Use Your Data on Facebook (Apr. 4, 2018) ("These updates are about making things clearer. **We're not asking for new rights to collect, use or share your data on Facebook**.") (emphasis in original)).

C.      **Facebook's Current Commercial Terms**

Facebook's "Commercial Terms" form contract has two different FSCs. One would pertain to a company residing outside the US (such as Rankwave) and another would pertain to a US-resident person or company. The language of these two FSCs is different:

> If you reside outside the US or your business is located outside the US: You agree that any claim, cause of action, or dispute *you have against us* that arises out of or relates to any access or use of the Facebook Products for business or commercial purposes must be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County, that you submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim, and that the laws of the State of California will govern these Commercial Terms and any such claim, without regard to conflict of law provisions.

> If you reside in the US or your business is located in the US: You and we agree to arbitrate any claim, cause of action, or dispute *between you and us* that arises out of or relates to any access or use of the Facebook Products for business or commercial purposes ("commercial claim").

Tabaie Decl. Ex. 3, Section 4(b).

## III.     RANKWAVE'S LACK OF ANY MEANINGFUL CONTACTS WITH CALIFORNIA

Rankwave is a South Korean company headquartered in Seoul, South Korea. Compl. ¶ 5; Park Decl. ¶ 3. It is currently comprised of eight employees (and never in its history consisted of more than eighteen), each of whom speaks Korean as his or her native language. Park. Decl. ¶ 3. All of Rankwave's employees have always worked for Rankwave in South Korea. *Id*. Rankwave estimates that over 99% of its documents and correspondence are in the Korean language. *Id*. ¶ 5. All of Rankwave's software, records, and assets are located in South Korea. *Id*. ¶ 3.

Rankwave is not registered to conduct business in California, does not have any employees in California, does not maintain corporate bank accounts or offices in California, and does not own any real or personal property or assets in California. *Id.* ¶¶ 3, 6. Rankwave has never had a client located in California, has never executed or performed a contract in California, has never accepted money from a California-based person or entity, has never marketed its apps in California or to Californians, and no Rankwave employee—to its executives' knowledge—has never even spoken to an employee of any Facebook-related entity (Facebook, Inc., or subsidiaries) located or based in California. *Id.* ¶¶ 4, 6, 9.

1   With respect to the specific Rankwave conduct alleged by Facebook in its Complaint,

2   Rankwave's only communications or meetings with any Facebook representatives (other than

3   immediately prior to this lawsuit) have been in the Korean language with Facebook representatives

4   based out of South Korea—namely, Mr. Dong Kyu Cho, Facebook's "Team Leader, GMS

5   Partnerships Marketing Development Manager," and Hyunsuk Park, Facebook's "Executive

6   Director, Head of Agency, Global Sales."[8] *Id. ¶¶ 7, 9.* Rankwave developed and marketed each and

7   every one of its apps to Facebook users or its own clients located in South Korea and in the Korean

8   language. *Id.* ¶ 4. Further, all of Rankwave's clients have been South Korean companies. *Id.*

9   Rankwave's three downloadable apps over the years were the "Rankwave App," the

10  "Rankcloud App," and the "Orangewave App." *Id.* ¶ 8. Rankwave is able to determine certain data

11  for these three apps, such as the country where a user was located when such apps were

12  downloaded. *Id.* ¶ 8. 71,618 combined total users downloaded the Rankwave, Rankcloud, and

13  Orangewave Apps from the Google Play Store and the Apple App Store (representing 100% of the

14  total downloads). *Id.* 98.65% of the users (70,654 users) who downloaded the Rankwave,

15  Rankcloud, and Orangewave Apps were located in South Korea when they did so, 0.49% (354

16  users) were located in the US, and the remaining approximately 0.85% (approximately 600 users)

17  were scattered throughout other countries. *Id.* With respect to the few hundreds of US downloads,

18  Rankwave is unable to determine which state the user was in when he or she downloaded the apps.

19  *Id.* That is to say, of the 354 downloads total that occurred in the United States, there is no

20  indication whether any (and if so, how many) occurred in California. *Id.*

21  With respect to Facebook interactions, Rankwave never negotiated any version of a

22  Facebook TOS in California and has never spoken to or met with any Facebook representative in

23  California. *Id.* ¶¶ 6, 9-10. Instead, all contacts between Rankwave and Facebook have been between

24  Rankwave employees and Facebook representatives located in South Korea (presumably employees

25  of non-party Facebook Korea Limited). *Id.* ¶¶ 7, 9; Kim Decl. ¶ 3, Exs. 1, 2.

26

27  [8]   Such individuals were likely not even employees of Facebook, Inc., the Delaware company

28  that is the only named plaintiff in this suit. Instead, such individuals are likely employees of
Facebook's South Korean affiliate, "Facebook Korea Limited." Kim Decl. ¶¶ 3-4, Exs. 1, 2.

1

## ARGUMENT

2

## I.  THE COURT LACKS PERSONAL JURISDICTION OVER RANKWAVE

3

### A.  Facebook Has the Burden of Establishing Personal Jurisdiction

4   "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the

5   plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred*

6   *Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). To meet this burden, "the plaintiff cannot

7   'simply rest on the bare allegations of its complaint,'" but rather must put forward affirmative

8   evidence in its pleadings and affidavits demonstrating a prima facie showing that personal

9   jurisdiction is proper. *Id.* A court "may not assume the truth of allegations in a pleading which are

10  contradicted by affidavit." *Picot v. Weston*, 780 F.3d 1206, 1209 n.1 (9th Cir. 2015).

11

### B.  Facebook Cannot Establish Personal Jurisdiction Over Rankwave

12  Since "California state courts may exercise personal jurisdiction on any basis not

13  inconsistent with the Constitution of [California] or of the United States," federal courts sitting in

14  California may exercise personal jurisdiction only if doing so "comports with the limits imposed by

15  federal due process." *Daimler AG*, 571 U.S. at 125. The exercise of jurisdiction over a nonresident

16  defendant comports with constitutional requirements if the defendant has "'minimum contacts' with

17  the relevant forum such that the exercise of jurisdiction does not offend traditional notions of fair

18  play and substantial justice." *Schwarzenegger*, 374 F.3d at 801.

19

#### 1.  Rankwave Is Not Subject to General Jurisdiction in California

20  Facebook recites a bare bones and incomplete version of the standard for general

21  jurisdiction, that Rankwave allegedly has "substantial, continuous, and systematic contacts" with

22  California. *See* Compl. ¶ 7. But Rankwave has no such contacts and recent Supreme Court

23  precedent (clarifying the standard for a foreign corporation) forecloses Facebook's arguments here.

24  The Supreme Court's test for general jurisdiction requires that a foreign corporation's

25  "affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it]

26  essentially at home in the forum State.'" *Daimler AG*, 571 U.S. at 122 (alteration in original). "Only

27  in an ***exceptional case*** will general jurisdiction be available" outside of a corporation's "place of

28  incorporation and its principal place of business." *Kellman v. Whole Foods Mkt., Inc.*, 313 F. Supp.

1    3d 1031, 1044 (N.D. Cal. 2018). "The Supreme Court's . . . decision in *Daimler* makes clear the

2    demanding nature of the standard for general personal jurisdiction over a corporation." *Martinez v.*

3    *Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014).

4            In *Martinez*, the plaintiffs alleged general jurisdiction against ATR, a French company,

5    based on ATR-executed contracts worth several million dollars to sell aircraft and components in

6    California, ATR's sending of company representatives to California for business purposes, an

7    unaffiliated entity's use of ATR's aircraft for flights in California, and ATR advertisements in

8    publications distributed in California. *See Martinez*, 764 F.3d at 1064-65, 1069-70. Aside from

9    those alleged contacts, ATR had "no offices, staff, or other physical presence in California, and

10   [was] not licensed to do business in the state." *Id.* at 1070. The Ninth Circuit, relying on *Daimler*

11   *AG*, found these contacts were "plainly insufficient to subject ATR to general jurisdiction in

12   California." *Id.*

13           Here, Rankwave's contacts with California do not come anywhere near the contacts ATR

14   had in *Martinez*, which themselves were deemed insufficient to assert general jurisdiction over the

15   defendant. Rankwave is a South Korean company with its principal place of business in South

16   Korea. Park Decl. ¶ 3. Rankwave has no offices, agents, or employees in California, nor does it

17   have any commercial activity here. *Id.* ¶ 6. Further, Facebook's Complaint does not allege facts

18   sufficient to demonstrate this is an "exceptional case" in which "a corporation's operations in a

19   forum other than its formal place of incorporation or principal place of business may be so

20   substantial and of such a nature as to render the corporation at home in that State." *Daimler AG*,

21   571 U.S. at 139 n.19. Thus, Facebook cannot establish that Rankwave is subject to general

22   jurisdiction in California.

23                   2.      Rankwave Is Not Subject to Specific Jurisdiction in California

24           Courts determine whether to exercise specific jurisdiction by evaluating the quality and

25   nature of the defendant's activities in the forum state in relation to the particular cause(s) of action.

26   *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 & nn.8-9 (1984);

27   *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068-69 (9th Cir. 2015).

28           For specific jurisdiction to be proper:

                                                    10

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden of satisfying the first two of these elements; if the plaintiff fails to establish ***either*** of them, specific jurisdiction is improper. *Id.* If the plaintiff does satisfy the first two elements, the burden then shifts to the defendant to prove that the exercise of personal jurisdiction over it would not be reasonable. *Id.*

When deciding personal jurisdiction, the Court starts with the allegations in the plaintiff's pleadings. *See Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539-40 (9th Cir. 1986); *Gutierrez v. Givens*, 989 F. Supp. 1033, 1038 (S.D. Cal. 1997). With respect to specific jurisdiction, Facebook has alleged merely that: (1) Rankwave has purposefully availed itself of the benefits and privileges of conducting business activities in California; (2) the claims asserted in the Complaint arise from and relate to the actions Rankwave directed toward California; and (3) Rankwave agreed to Facebook's current TOS, and therefore agreed to submit to the personal jurisdiction of California courts. Compl. ¶¶ 7-8. Each of Facebook's conclusory allegations are false and, as a result, this Court should not exercise specific jurisdiction over Rankwave.

(a)     Facebook Cannot Establish That Rankwave Purposefully Availed Itself of the Forum State of California

"A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802. However, a "contract alone does not automatically establish minimum contacts in the plaintiff's home forum." *Picot*, 780 F.3d at 1212.

Instead, the plaintiff must establish that the defendant "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state," which is

11

1  determined by considering "prior negotiations and contemplated future consequences, along with

2  the terms of the contract and the parties' actual course of dealing." *Id.*

3       Here, Facebook has alleged no—and indeed can point to no—California contacts by

4  Rankwave establishing that Rankwave purposefully availed itself of the forum of California.

5  Rankwave has no office, agents, employees, or any commercial activities in California. Park Decl.

6  ¶ 6. It has never executed or performed a contract in California, let alone one with Facebook. *Id.*

7  Rankwave has never accepted money from a California-based person or entity, has never marketed

8  its apps in California or to Californians, and—to its executives' knowledge—has never even spoken

9  to a Facebook representative based in California. *Id.* ¶¶ 6, 9.

10       In fact, each and every one of Rankwave's apps were created in the Korean language, and

11  each of those apps were marketed solely to South Korean users and South Korean businesses. *Id.*

12  ¶ 4. Every single one of Rankwave's clients (with which Facebook alleges improper data sharing)

13  were also South Korean businesses, and Rankwave has never accepted money from a California-

14  based person or entity. *Id.* ¶¶ 4, 6. Nearly all (98.65%) of the users of Rankwave's downloadable

15  apps on the Google Play and the Apple App stores downloaded the apps in South Korea. *Id.* ¶ 8.

16       With respect to Facebook specifically, Rankwave never negotiated any version of a

17  Facebook TOS (whether with Facebook, Inc., the Facebook subsidiary in Ireland, or the Facebook

18  subsidiary in Korea) in California or even visited or met with anyone from Facebook in California.

19  *Id.* ¶¶ 6-7, 9-10. All of Rankwave's communications and meetings with Facebook representatives—

20  up until Facebook had the Gibson Dunn law firm start making pre-litigation demands relating to

21  this lawsuit—have been with representatives of Facebook's South Korean subsidiary located in

22  South Korea, not Facebook, Inc. employees (or anyone else) in California. *Id.* ¶¶ 7, 9.

23       Accordingly, Facebook cannot establish that Rankwave purposefully availed itself of

24  California laws. *See 180Squared, Inc. v. Allo Twin Cities LLC*, 2013 WL 12146129, at *5-6 (N.D.

25  Cal. Jan. 18, 2013) (dismissing for lack of personal jurisdiction despite contract with a California

26  company where nonresident defendant had no contacts with California and did not negotiate the

27  contract in California).

28

1    Facebook may try to argue that sufficient minimum contacts with California exist because

2  Facebook is a California-based entity, it is generally known (or purportedly known by Rankwave)

3  that Facebook has strong connections to California, and Rankwave historically used the Facebook

4  platform in its business (albeit from South Korea). But such an argument is precluded by the facts

5  and, even if true, runs directly counter to recent Supreme Court precedent.

6    Such an argument would be precluded by the facts because, up until 2018, the actual

7  contracting party to Facebook's TOS with international users was Facebook Ireland Limited, which

8  is not a California business. Further, Facebook's current TOS states that Facebook "store[s] and

9  distribute[s] content and data in our data centers and systems throughout the world . . . this

10  infrastructure may be operated or controlled by Facebook, Inc., Facebook Ireland Limited, or its

11  affiliates. 'throughout the world'." *See supra* at 6. Accordingly, no one reading Facebook's TOS

12  would know that an international user of Facebook is interacting with Facebook out of California.

13    More importantly, such an argument is precluded by recent Supreme Court precedent. In

14  2014, the Supreme Court held that "our 'minimum contacts' analysis looks to the defendant's

15  contacts with the forum state itself, not the defendant's contacts with persons who reside there."

16  *Walden v. Fiore*, 571 U.S. 277, 285 (2014); *see id.* at 289 (finding no specific personal jurisdiction

17  as "[defendant]'s actions in [out-of-state forum] did not create sufficient contacts with [forum state]

18  simply because he allegedly directed his conduct at plaintiffs whom he knew had [forum state]

19  connections"). After *Walden*, the Ninth Circuit recognized that:

20
> In *Walden*, the Supreme Court rejected our conclusion that "the defendants'"
> knowledge of [the plaintiffs'] "strong forum connections," plus the "foreseeable
21  > harm" the plaintiffs suffered in the forum, comprised sufficient minimum
> contacts. . . .The Court made clear that we must look to the defendant's "own
22  > contacts" with the forum, not to the defendant's knowledge of a plaintiff's
> connections to a forum.
23

24  *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069-70 (9th Cir. 2017).

25          (b)    Facebook's Claims Do Not Arise out of or Relate to Any California-
Related Activities by Rankwave
26

27    Facebook also cannot establish that its claims arise out of any Rankwave California-directed

28  conduct (the second element). Rankwave has no presence in California. *See supra* at 7-8. Because

13

1   Facebook's claims fail under the first element, the claims could not have arisen out of Rankwave's

2   California-directed conduct. *Picot*, 780 F.3d at 1213 n.2 ("Because [plaintiff] has failed to establish

3   that [defendant] purposefully availed himself of the privilege of conducting activities in California,

4   we need not address whether the suit arises out of [defendant]'s forum-related activities. . . .").

5   Further, "[u]nder [the second element,] the Ninth Circuit uses the 'but for' test to determine

6   whether a particular claim arises out of the [defendant's] forum-related activities." *Nimbus Data*

7   *Sys., Inc. v. Modus LLC*, 2014 WL 7387200, at *6 (N.D. Cal. Dec. 29, 2014). That "test is met

8   where a direct nexus exists between defendant's contacts with the forum state and the cause of

9   action." *Id.* Here, Facebook is suing Rankwave based on Rankwave's South Korean conduct,

10  allegedly directed at South Korean Facebook users, and involving South Korean businesses. Park

11  Decl. ¶¶ 3-4. There is no nexus between Rankwave's nonexistent California-related activities and

12  Facebook's claims.

13              (c)    <u>Jurisdiction Over RankWave in California Would Be Unreasonable</u>

14  Even if, assuming *arguendo*, Facebook was able to satisfy the first two elements of specific

15  jurisdiction, exercising specific jurisdiction over Rankwave would not comport with "fair play and

16  substantial justice." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487 (9th Cir. 1993),

17  *overruled in part on other grounds by Yahoo! Inc. v. La Ligue Contre le Racisme et*

18  *L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006) (en banc). Courts in the Ninth Circuit determine

19  whether the exercise of jurisdiction is reasonable by considering seven factors:

20              (1) the extent of the defendant's purposeful interjection into the forum state's
21              affairs; (2) the burden on the defendant of defending in the forum; (3) the extent
                of conflict with the sovereignty of the defendant's state; (4) the forum state's
22              interest in adjudicating the dispute; (5) the most efficient judicial resolution of the
                controversy; (6) the importance of the forum to the plaintiff's interest in
23              convenient and effective relief; and (7) the existence of an alternative forum.

24  *Id.* at 1487-88.

25  The first factor weighs in Rankwave's favor. As noted above, Rankwave has no contacts

26  with California and has not purposefully interjected itself into Californian affairs. Even in cases

27  where a defendant had purposefully availed itself of conducting business in the forum, the Ninth

28  Circuit has declined to exercise jurisdiction when the level of business activity was relatively

14

attenuated. *See id.* at 1488. In *Core-Vent*, the defendants (Swedish doctors) allegedly wrote libelous articles about a product distributed worldwide by the plaintiff, a California corporation, for the express purpose of driving the plaintiff out of business, *see id.* at 1483-84, 1487, yet the Ninth Circuit found this first factor in the doctors' favor. *Id.* at 1488. Here, Rankwave's contacts with California are nil.

As to the second factor: the Ninth Circuit has recognized that defending a lawsuit in a foreign country can impose a substantial burden on nonresidents, especially those who have no ongoing connection to or relationship with the United States. *See id.* ("The burden in this case is particularly great because the Swedish doctors have no ongoing connection to or relationship with the United States."). The Ninth Circuit has also recognized the "strong weight" of this factor, *id.* at 1489, where the burden on the defendant to defend in California is greater than the burden on the plaintiff in bringing its claims in a foreign country. *See id.* (finding this factor "weighs heavily in favor of the [defendants]" because the defendants had "little or no physical contacts with California"; plaintiff "[o]n the other hand, [was] a large international corporation with worldwide distribution of its products."). Such is the case here where Facebook—which has a South Korean subsidiary and is one of the world's largest businesses—would face far less difficulty litigating in South Korea than Rankwave would face litigating in California.

The third factor also weighs in Rankwave's favor. "[L]itigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist." *Id.* (alteration in original). Rankwave is an international or alien corporation, and "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Id.* The Ninth Circuit has further recognized that "[s]overeignty concerns weigh more heavily when the defendants have no United States-based relationships." *Id.* Thus, because Rankwave has no US-based relationships, this factor also weighs heavily in favor of Rankwave.

As to the fifth factor: the Ninth Circuit evaluates primarily "where the witnesses and the evidence are likely to be located." *Id.* Here, Rankwave and all of Rankwave's employees are located in South Korea. All documents relating to Rankwave's business, data use policies, and

1    clients are located in South Korea and over 99% of the documents are in the Korean language. Even

2    Facebook's witnesses will be from Facebook's South Korean subsidiary, as all of Rankwave's

3    communications with Facebook were with its South Korean representative(s), who will be key

4    witnesses in this action. Thus, this factor also weighs in favor of denying personal jurisdiction.

5            The sixth and seventh factors also weigh in favor of Rankwave. The claims here could be

6    brought against Rankwave in South Korea. "The plaintiff bears the burden of proving the

7    unavailability of an alternative forum." *Id.*   at 1490. Facebook has alleged no facts proving that it

8    would be precluded from suing Rankwave in South Korea. "Doubtless [it] would prefer not to, but

9    that is not the test." *Id.* (alteration in original).

10           Litigating its claims in South Korea would also not be particularly inconvenient for

11   Facebook, which has an office there. Kim Decl. ¶ 3, Ex. 1. Moreover, "neither the Supreme Court

12   nor [the Ninth Circuit] has given much weight to inconvenience to the plaintiff." *Core-Vent*, 11

13   F.3d at 1490. "A mere preference on the part of the plaintiff for its home forum does not affect the

14   balancing; indeed this factor is insignificant in this case." *Id.*

15                        3.      The Forum Selection Clause in Facebook's Current TOS Is Inapplicable

16           Finally, Facebook alleges that Rankwave agreed to Facebook's current TOS, and therefore

17   "agreed to submit to the personal jurisdiction of [California courts] for litigating claims, causes of

18   action, or disputes with Facebook." Compl. ¶ 8. But this allegation is contradicted by the terms of

19   the document (Facebook's current TOS) on which it relies.

20           "[T]he scope and enforcement of a forum selection clause is a matter of contract." *Polar

21   Shipping Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 632 (9th Cir. 1982). "In order to determine

22   the scope of the forum selection clause, the Court must examine its construction." *Terra Tech Corp.

23   v. Vandevrede*, 2018 WL 6016162, at *4 (C.D. Cal. Aug. 3, 2018). The Ninth Circuit (unlike most

24   other circuits) has held that FSCs must be interpreted under federal common law, as opposed to

25   state law. *See Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988)

26   ("[B]ecause enforcement of a forum clause necessarily entails interpretation of the clause before it

27   can be enforced, federal law also applies to interpretation of forum selection clauses.") (alteration in

28   original).

1   Federal courts apply "general principles for interpreting contracts" when interpreting FSCs,

2   including the "primary rule of interpretation . . . that the common or normal meaning of language

3   will be given to the words of a contract unless circumstances show that in a particular case a special

4   meaning should be attached to it." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009) (ellipses

5   in original).

6   *Filtrexx International, LLC v. Truelsen*, 2013 WL 587582 (N.D. Ohio Feb. 13, 2013), is

7   instructive. There, the plaintiff argued that the defendants "consented to or contractually waived

8   their right to contest [the court's] exercise of personal jurisdiction by entering into" a forum

9   selection agreement. *Id.* at *4. Under the language of that agreement, the defendants consented to

10  personal jurisdiction over them in the Northern District of Ohio for actions that defendants might

11  commence, but not generally for any and all actions that either party might commence:

12          [I]t is clear that the parties contemplated that consent to the Ohio federal courts'
            venue and personal jurisdiction arises only when [*corporate defendant*]
13          "commences and maintains" an action in connection with the agreement . . . ,
            rather than when [*plaintiff*] does so, as is the case here. [Plaintiff] could have
14          drafted a provision applicable to litigation it initiated or it could have used
            language indicating that the parties consented to the jurisdiction of this Court as to
15          *all* disputes arising out of the agreement, but it did not do so.

16  *Id.* at *6 (emphasis in original); *see also id.* at *5 & n.13 (applying Ohio law but noting "that Ohio

17
    and federal law treat the interpretation of forum selection clauses similarly").
18

19  Here, Facebook's FSC in the current TOS provides that it applies only to claims brought by

20  Rankwave (or other parties who agree to Facebook's TOS) ***against Facebook***, not to claims

    brought by Facebook against Rankwave (or other parties). Again, the TOS reads:
21

22          For ***any claim, cause of action, or dispute you have against us*** *that arises out of
            or relates to these Terms or the Facebook Products (**'claim'**),* ***you agree that it***
23          ***will be resolved exclusively in the U.S. District Court for the Northern District***
            ***of California or a state court located in San Mateo County***. You also agree to
24          submit to the personal jurisdiction of either of these courts for the purpose of
            litigating ***any such claim***, and that the laws of the State of California will govern
25          these Terms and any claim, without regard to the conflict of law provisions.

26  Tabaie Decl. Ex. 1, Section 4.4.

27  The TOS language, "any claim, cause of action, or dispute you have against us," is

28  dispositive. A plain and unambiguous reading of that initial clause dictates that it governs only

                                                    17

those claims brought by parties *against* Facebook, not claims brought by Facebook against parties, like Rankwave. Section 4.4 of the current TOS goes on to state that a Facebook user agrees "to submit to the personal jurisdiction of [California courts] for the purpose of litigating any *such claim*." *Id.* But "claim" has already been defined by Facebook as "any claim . . . you have against us that arises out of or relates to these Terms or the Facebook Products." *Id.* Using general contract interpretation principles, it is clear that, based on the language of the TOS, the FSC does not apply to the Complaint because Rankwave has not brought "claims" "against" Facebook. Thus, Facebook's TOS cannot confer personal jurisdiction in California. *See Filtrexx Int'l*, 2013 WL 587582, at \*4-6; *Terra Tech*, 2018 WL 6016162, at \*6-7 (no personal jurisdiction because none of plaintiff's claims fell within the scope of the FSC).

Facebook cannot argue that Section 4.4 of its current TOS should somehow be read to encompass circumstances in which Facebook is asserting claims itself. A separate, publicly available Facebook terms of service—Facebook's "Commercial Terms"—has two FSCs next to each other that show Facebook knows exactly how to write a two-way FSC when it wants to. Tabaie Decl. Ex. 3, Section 4(b). The first clause in Section 4(b) of Facebook's Commercial Terms applies to parties that reside outside the U.S. and has the nearly identical "any claim, cause of action, or dispute *you have against us*" language found in Facebook's current TOS. But then Section 4(b) of Facebook's Commercial Terms has a second forum selection provision: "If you reside in the US or your business is located in the US: *You and we agree to arbitrate any claim, cause of action, or dispute between you and us* that arises out of or relates to any access or use of the Facebook Products . . . ." *Id.*

These two provisions, juxtaposed against each other in the very same Facebook-prepared contract, show that Facebook knows exactly how to draft an FSC that applies one-way to claims by a user against Facebook (such as the current, asserted TOS and the first FSC in Section 4(b) of Facebook's Commercial Terms) and also how to draft a provision that applies two-ways for claims asserted by a user against Facebook or vice versa (such as the second FSC in Section 4(b) of Facebook's Commercial Terms). In any event, when Facebook drafted the TOS that it is asserting against Rankwave in this case, it appears to have wanted to preserve the ability to sue parties to its

18

1    TOS in jurisdictions other than in Northern California. That was Facebook's drafting choice, and

2    Facebook has to live with it.

3         Further, even if Facebook's TOS were ambiguous, it would have to be construed against

4    Facebook, its drafter. "In the Ninth Circuit, when a forum selection clause is ambiguous, 'the court

5    should construe the language against the drafter of the contract.'" *Terra Tech*, 2018 WL 6016162,

6    at *5. There can be no question that Facebook was the drafter of the current TOS; it is a contract of

7    adhesion drafted by Facebook and forced upon Facebook users. Compl. ¶ 13 ("All Facebook users,

8    including Developers, agree to comply with Facebook's TOS when they create a Facebook

9    account."); *see Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003) (defining a "contract of

10   adhesion" as "a standardized contract, drafted by the party of superior bargaining strength, that

11   relegates to the subscribing party only the opportunity to adhere to the contract or reject it").

12   **II.    CALIFORNIA IS NOT A CONVENIENT FORUM FOR THIS ACTION**

13        Even if personal jurisdiction over Rankwave were proper (it is not), this Court should still

14   decline to exercise jurisdiction over this South Korea-based dispute. Under the doctrine of forum

15   non conveniens, a "district court has discretion to decline to exercise jurisdiction where litigation in

16   a foreign forum would be more convenient for the parties." *Lueck v. Sundstrand Corp.*, 236 F.3d

17   1137, 1142 (9th Cir. 2001). In assessing a forum non conveniens motion, "the court must examine:

18   (1) whether an adequate alternative forum exists, and (2) whether the balance of private and public

19   interest factors favors dismissal." *Id.* South Korea is an adequate alternative forum, and all relevant

20   considerations favor litigating this suit in South Korea over California.

21        **A.    South Korea Is an Adequate Alternative Forum**

22        "At the outset of any *forum non conveniens* inquiry, the court must determine whether there

23   exists an alternative forum." *Piper Aircraft*, 454 U.S. at 254 n.22. This requirement is ordinarily

24   met "when the defendant is 'amenable to process' in the other jurisdiction." *Id.*; *accord Lueck*, 236

25   F.3d at 1143.

26        As a South Korean company, Rankwave is amenable to service of process in South Korea,

27   and will consent to the jurisdiction of the South Korean courts. Park Decl. ¶¶ 3, 11. *See Lockman*

28   *Found. v. Evangelical All. Mission*, 930 F.2d 764, 768 (9th Cir. 1991) ("Because the record shows

19

1  that TEAM has agreed to submit to Japanese jurisdiction, and because TEAM/Domei and McVety

2  reside in Japan, the threshold test is satisfied."); *Honshu Shipping Co., Ltd. v. M/V Trade Zale*, 2005

3  WL 3676097, at *3 (N.D. Cal. Apr. 28, 2005) (South Korea was an adequate forum where

4  defendants had stated that "they [would] voluntarily submit to the jurisdiction of Korea").

5  Moreover, South Korean courts are more than capable of impartially resolving the parties' dispute.

6  *See Honshu Shipping*, 2005 WL 3676097, at *3 ("[Defendant] argue[d] that Korea is clearly an

7  adequate alternative forum. . . . [Plaintiff] (wisely) [did] not seriously contend otherwise."); *Yang v.

8  M/V Minas Leo*, 1994 WL 36921, at *6 (N.D. Cal. Jan. 25, 1994) (finding South Korea an adequate

9  alternative forum), *aff'd mem.*, 76 F.3d 391 (9th Cir. 1996). The alternative forum requirement is

10 thus easily satisfied.

11 **B.    All Relevant Convenience Factors Favor Litigation in South Korea**

12       After establishing that an adequate alternative forum exists, courts must then evaluate

13 whether the public and private interests that would be served by litigating in the alternative forum

14 are strong enough to overcome the deference traditionally afforded to the plaintiff's choice of

15 forum. *See Lockman Found.*, 930 F.2d at 767. In conducting this inquiry, the Ninth Circuit has

16 noted that the "deference due to plaintiffs . . . is far from absolute." *Id.* "[T]he cases demonstrate

17 that defendants frequently rise to the challenge of showing an alternative forum is the more

18 convenient one." *Id.* This is particularly true where, as here, the events giving rise to the lawsuit

19 have little connection to the forum other than the plaintiff's residency. *See, e.g.*, *Loya v. Starwood

20 Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 665, 667 (9th Cir. 2009) (affirming district court's

21 decision not to defer to plaintiff's choice of forum where all relevant events occurred in Mexico);

22 *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("If the operative facts have not occurred within

23 the forum and the forum has no interest in the parties or subject matter, [the plaintiff's] choice [of

24 forum] is entitled to only minimal consideration.").

25       "The presence of American plaintiffs . . . is not in and of itself sufficient to bar a district

26 court from dismissing a case on the ground of *forum non conveniens*." *Cheng v. Boeing Co.*, 708

27 F.2d 1406, 1411 (9th Cir. 1983); *accord Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d

28 1446, 1449 (9th Cir. 1990). As the Supreme Court has explained, a "citizen's forum choice should

1  not be given dispositive weight . . . . [I]f the balance of conveniences suggests that trial in the

2  chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is

3  proper." *Piper Aircraft*, 454 U.S. at 256 n.23; *accord Lockman Found.*, 930 F.2d at 767. Here, the

4  strong public and private interests in favor of litigating in South Korea entirely outweigh the

5  minimal deference due to Facebook's choice of this unrelated forum.

6  1.    The Private Interest Factors Favor Dismissal

7      Courts "consider the following private interest factors: (1) the residence of the parties and

8  the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other

9  sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of

10  bringing witnesses to trial; (6) the enforceability of the judgment; and (7) 'all other practical

11  problems that make trial of a case easy, expeditious and inexpensive.'" *Lueck*, 236 F.3d at 1145.

12      Individually or weighed together, these factors all favor dismissal. The first, second, and

13  third factors favor dismissal because Rankwave, all of its employees (*i.e.*, most of the relevant

14  witnesses in this action), and all of its software, records, and assets are located in South Korea, plus

15  99% of Rankwave's documents are in the Korean language. Park Decl. ¶¶ 3, 5. In addition to the

16  Rankwave employees, all of the Facebook representatives who communicated with Rankwave

17  reside in South Korea. Park Decl. ¶ 7. Thus, it is no stretch to say that Facebook cannot obtain ***any***

18  discovery relevant to its claims from Rankwave in the United States; all discoverable information

19  from Rankwave, including witness testimony, will necessarily have to come from South Korea. It

20  will therefore be far more convenient to manage any lawful discovery in South Korea than in

21  California. *See, e.g.*, *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 696 (9th Cir. 2009) (holding

22  that district court did not err "when it found that the location of most of the relevant documentary

23  evidence in Europe" favored a European forum); *In re Air Crash Over Mid-Atl. on June 1, 2009*,

24  760 F. Supp. 2d 832, 843-44 (N.D. Cal. 2010) (private factors weighted in favor of dismissal where

25  "all the physical evidence that has been recovered [from the airplane crash] is located" in France).

26      The fourth, fifth, and seventh factors also favor South Korea. This Court will have far less

27  ability to compel reluctant South Korean witnesses to testify than a court in South Korea would. *See*

28  *Air Crash Over Mid-Atl.*, 760 F. Supp 2d at 844 (finding that because "it will [be] difficult to

21

compel non-parties to produce evidence from France (or elsewhere in Europe) in the United States, the balance of the private interest factors concerning access to relevant evidence tips in favor of dismissal"). Moreover, if this action were to advance to trial, virtually all of the relevant witnesses would have to fly to and stay in the United States at tremendous expense and inconvenience, all of which can be avoided by litigating in South Korea. *See Cook v. Champion Tankers AS*, 2013 WL 1629136, at *8-9 (N.D. Cal. Apr. 16, 2013) (dismissing suit in part because "the cost of bringing the material witnesses to trial would be substantially less if [plaintiffs] claims were litigated in Hong Kong . . . because most of these witnesses reside in countries that are closer to Hong Kong").

Finally, the sixth factor likewise favors litigating in South Korea. A South Korean judgment would, of course, be enforceable in any South Korean court. And moreover, a South Korean judgment would also be readily enforceable in California under the Uniform Foreign-Country Money Judgments Recognition Act. *See* Cal. Civ. Proc. Code § 1716(a) ("[A] court of this state shall recognize a foreign-country judgment to which this chapter applies."); *Hyundai Sec. Co. v. Lee*, 232 Cal. App. 4th 1379, 1383, 1389-90 (2015) (affirming enforcement of South Korean judgment). By contrast, it is uncertain whether this Court's judgment could be enforced in South Korea, in light of the serious concerns about this Court's personal jurisdiction discussed above. *See* Wonsik Yoon, et al. *Enforceability of Judgments in South Korea: Overview*, THOMSON REUTERS PRACTICAL LAW (Sept. 1, 2015), https://us.practicallaw.thomsonreuters.com/5-619-0510 (explaining that South Korean courts will not enforce foreign judgments unless the issuing court had jurisdiction under principles of international law, and noting that the South Korean Supreme Court has previously denied enforcement of a California judgment on jurisdictional grounds).

2.    The Public Interest Factors Favor Dismissal

Courts also "consider the following public interest factors: (1) local interest of lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum." *Lueck*, 236 F.3d at 1147.

The balance of these factors favors dismissal. The local interest factor favors litigation in South Korea because virtually all of the alleged actions Facebook complains of occurred in South Korea, giving this District very little interest in the dispute. *See Nibirutech Ltd. v. Jang*, 2015 WL

1  831465, at \*6 (N.D. Cal. Feb. 23, 2015) (finding "minimal, if any, local (California) interest in this

2  case" where dispute was centered in China). This is particularly true because the users who

3  downloaded Rankwave's apps, and therefore whose data was allegedly mishandled by Rankwave,

4  were almost all in South Korea when they downloaded the apps (98.65% of users), giving South

5  Korea a substantially greater interest in this controversy than the US (only 0.85% of users). Park

6  Decl. ¶ 8. *See Capri Trading Corp. v. Bank Bumiputra Malaysia Berhad*, 812 F. Supp. 1041, 1045-

7  46 (N.D. Cal. 1993) (holding that "Hong Kong has a much greater local interest in resolving this

8  suit" than California where allegedly injured non-parties lived in Hong Kong); *cf. Duffy v.*

9  *Facebook, Inc.*, 2017 WL 1739109, at \*7 (N.D. Cal. May 4, 2017) (holding, in a case alleging racial

10  discrimination by Facebook, that North Carolina—where the alleged victims of the discrimination

11  were located—had a "much greater interest and obligation to hear this case than California"). The

12  fifth factor also favors litigation in South Korea because it is an inefficient use of this Court's

13  resources to expend significant time adjudicating a complex dispute (dominated by documents in

14  the Korean language) that has no nexus with this forum. *Nibirutech Ltd.*, 2015 WL 831465, at \*7.

15  The remaining factors are not relevant under these facts, and are thus neutral. The second

16  factor is irrelevant because both this Court and the South Korean courts are competent to adjudicate

17  contract-related claims, which are widely litigated in developed countries. The third and fourth

18  factors are not relevant because this lawsuit would be burdensome for courts and juries and increase

19  court congestion no matter where it is adjudicated.

20  **III.    FACEBOOK FAILS TO STATE A UCL CLAIM**

21  **A.    Standard of Review**

22  A complaint cannot survive a motion to dismiss under Federal Rule of Civil Procedure

23  12(b)(6) if it does not contain allegations sufficient "to state a claim to relief that is plausible on its

24  face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of

25  a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556

26  U.S. 662, 678 (2009).

27  UCL claims like Facebook's that sound in fraud are subject to the heightened pleading

28  requirements of Federal Rule of Civil Procedure 9(b). *See Meyer v. Aabaco Small Bus., LLC*, 2018

23

1   WL 306688, at *3 (N.D. Cal. Jan. 5, 2018) (collecting cases).

2         **B.**    <u>**Facebook Fails to State a Claim Under the UCL**</u>

3         The UCL prohibits (1) unlawful, (2) unfair or (3) fraudulent business acts or practices. Cal.

4   Bus. & Prof. Code § 17200. Here, Facebook fails to allege facts to support its UCL claim.

5                 1.    <u>Facebook Fails to Allege Unlawful Conduct</u>

6         Facebook's UCL claim fails under the unlawful prong because Facebook has not adequately

7   pleaded facts sufficient to identify any law Rankwave has allegedly violated. "Where a plaintiff

8   cannot state a claim under [another] law, he or she cannot state a UCL claim either." *Suarez v. Bank*

9   *of Am. Corp.*, 2018 WL 2431473, at *31 (N.D. Cal. May 30, 2018). To bring a UCL claim under

10  the unlawful prong, a plaintiff "must identify the particular section of the statute that was violated,

11  and must describe with reasonable particularity the facts supporting the violation." *Baba v. Hewlett-*

12  *Packard Co.*, 2010 WL 2486353, at *6 (N.D. Cal. June 16, 2010). "***A breach of contract***, and by

13  extension, a breach of the implied covenant of good faith and fair dealing, ***is not itself an unlawful***

14  ***act for purposes of the UCL***." *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094,

15  1110 (E.D. Cal. 2010); *see also Singh v. Google Inc*., 2017 WL 2404986, at *4 (N.D. Cal. June 2,

16  2017) ("[A] UCL claim cannot rest on a claim for breach of the implied covenant . . . ."). Here,

17  Facebook's breach of contract and implied covenant of good faith and fair dealing claims cannot

18  support its UCL claim and Facebook does not allege that Rankwave violated any other law.

19                2.    <u>Facebook Fails to Allege Unfair Conduct</u>

20        With respect to competitors, the California Supreme Court has defined "unfair" conduct as

21  "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of

22  one of those laws because its effects are comparable to or the same as a violation of the law, or

23  otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular*

24  *Tel. Co.*, 20 Cal. 4th 163, 187 (1999). Facebook has "not alleged an antitrust injury, i.e. harm to

25  competition, which is distinct from harm to a competitor. On this basis alone, the 'unfair'

26  competition claim is subject to dismissal." *UCAR Tech. (USA) Inc. v. Yan Li*, 2018 WL 2555429, at

27  *7 (N.D. Cal. June 4, 2018). Even under the more lenient "consumer" test, Facebook fails to allege

28

1  that Rankwave violated any public policy, or that its actions were "immoral, unethical, oppressive,

2  or unscrupulous." *See Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 858 (N.D. Cal. 2012).

3              3.     Facebook Fails to Allege Fraud

4         Facebook's UCL claim under the fraud prong fails because Facebook has not adequately

5  pleaded that Rankwave engaged in fraudulent conduct. *See Minkler v. Apple, Inc.*, 65 F. Supp. 3d

6  810, 821 (N.D. Cal. 2014) ("Because Plaintiff has not pled with particularity the circumstances

7  surrounding Apple's fraudulent behavior, she has failed to meet the 9(b) pleading standards for her

8  claims sounding in fraud and the Court will dismiss the . . . UCL counts against Apple."). In order

9  to plead a fraud-based UCL claim, Facebook must specify the "'who, what, when, where, and how'

10 of the misconduct alleged and detail the 'time, place, and specific content of the false

11 representations.'" *Id.* at 821. Here, Facebook's fraud-prong UCL claim is based solely on its

12 conclusory allegations that Rankwave engaged in fraudulent conduct. Compl. ¶ 58. Accordingly, it

13 should be dismissed.

14             4.     Facebook Fails to Allege Its Own Reliance

15        Facebook's failure to plead actual reliance on any alleged representation by Rankwave is

16 also fatal to its UCL claim under the fraud prong and the unlawful prong. To establish standing to

17 bring a fraud-based UCL claim, Facebook must plead and prove its "own reliance . . . rather than

18 the reliance of third parties." *L.A. Taxi Coop., Inc. v. Uber Techs., Inc*., 114 F. Supp. 3d 852, 866

19 (N.D. Cal. 2015). Here, Facebook does not plead that it relied on any allegedly false or misleading

20 statement made by Rankwave. In fact, Facebook does not plead that ***anyone*** relied on any allegedly

21 false or misleading statement made by Rankwave. Accordingly, Facebook's UCL claim—to the

22 extent it relies on allegations of misrepresentation and deception—should be dismissed.

23                          **CONCLUSION**

24        For the foregoing reasons, the Court should dismiss this action entirely, or alternatively

25 dismiss Facebook's UCL claim.

26 DATED: July 12, 2019              SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

27                          By: _____/s/ *John M. Neukom*_____
                                   JOHN M. NEUKOM
28                                 Attorneys for Defendant Rankwave Co., Ltd.

                                        25