GIBSON, DUNN & CRUTCHER LLP
ORIN S. SNYDER (*pro hac vice* pending)
  osnyder@gibsondunn.com
ALEXANDER H. SOUTHWELL (*pro hac vice* pending)
  asouthwell@gibsondunn.com
200 Park Avenue
New York, NY  10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

GIBSON, DUNN & CRUTCHER LLP
ETHAN D. DETTMER, SBN 196046
  edettmer@gibsondunn.com
KIM DO, SBN 324131
  kdo@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA  94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

Attorneys for Plaintiff Facebook, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>RANKWAVE CO., LTD., a South Korean corporation,<br><br>Defendant. | CASE NO. 3:19-cv-03738-JST<br><br>**(A) FACEBOOK, INC.'S OPPOSITION TO RANKWAVE CO., LTD.'S MOTION TO DISMISS**<br><br>**(B) DECLARATION OF MICHAEL P. DUFFEY**<br><br>**(C) DECLARATION OF RONAK PAREKH**<br><br>**(D) DECLARATION OF JIN-YEONG CHUNG**<br><br>**(E) DECLARATION OF KIM DO**<br><br>**(F) PROPOSED ORDERS**<br><br>**Hearing:**<br>Date:          September 18, 2019<br>Time:          2:00 p.m.<br>Place:         Oakland, Courtroom 6, 2nd Floor<br>Judge:         Honorable Jon S. Tigar<br><br>Complaint Filed: May 10, 2019<br>Complaint Removed: June 27, 2019 |

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

ARGUMENT ....................................................................................................................... 4

I.     The Court Has Personal Jurisdiction Over Rankwave. .................................................. 4

     A.     The Court Has Specific Jurisdiction Over Rankwave Based On Rankwave's Choice To Create Meaningful Contacts With California. ............ 5

          1.     Rankwave Purposefully Availed Itself Of The Benefits And Protections Of A California Forum. ..................................................... 5

               (i)     Rankwave Accepted The Benefits Of California Law. ............. 6

               (ii)     Rankwave's Business Model Depends On Facebook And Other California Companies. .............................................. 6

               (iii)     Hundreds Of Californians Used Rankwave's Apps, And Rankwave Advertised In California. ........................................ 7

               (iv)     Rankwave Used Computer Infrastructure Located In California To Operate Its Apps And Obtain Facebook Data. ........................................................................................ 7

          2.     This Suit Arises Out Of Rankwave's Contacts With California. .......... 9

          3.     Exercising Jurisdiction Over Rankwave Would Not Be Unreasonable. ............................................................................... 10

     B.     Rankwave Consented To This Court's Jurisdiction. ...................................... 12

     C.     In The Alternative, The Court Should Require Jurisdictional Discovery. ...... 17

II.     This Court Is The Proper Forum For Resolving These Disputes. ............................... 18

     A.     Rankwave Has Not Shown That South Korea Is An Adequate Alternative Forum. ...................................................................................... 19

     B.     Rankwave Has Not Shown That The Public Interest Factors Clearly Weigh In Favor Of Dismissal. ...................................................................... 20

     C.     If Relevant, The Private Interest Factors Weigh In Favor Of California. ....... 21

III.     The Complaint States A Claim For Relief Under California's UCL. ....................... 24

CONCLUSION ................................................................................................................. 25

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*180Squared Inc. v. Allo Twin Cities LLC*,
2013 WL 12146129 (N.D. Cal. Jan. 18, 2013) ...............................................................8

*In re Air Crash Over Mid-Atl. on June 1, 2009*,
760 F. Supp. 2d 832 (N.D. Cal. 2010) ...........................................................................23

*Alday v. Raytheon Co.*,
693 F.3d 772 (9th Cir. 2012)..........................................................................................14

*Am. Student Fin. Grp., Inc. v. Dade Med. Coll., Inc.*,
180 F. Supp. 3d 671 (S.D. Cal. 2015) ............................................................................16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................................................24

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*,
571 U.S. 49 (2013) ...........................................................................................2, 19, 20, 24

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017)......................................................................................8, 9

*Ballard v. Savage*,
65 F.3d 1495 (9th Cir. 1995)..........................................................................4, 5, 11, 12

*Bates v. United States*,
522 U.S. 23 (1997) .........................................................................................................14

*Bd. of Trustees of Leland Stanford Junior Univ. v. Chiang Fang Chi-Yi*,
2015 WL 5158749 (N.D. Cal. Sept. 2, 2015) ................................................................20

*Bos. Telecomms. Grp., Inc. v. Wood*,
588 F.3d 1201 (9th Cir. 2009)...........................................................................18, 20, 21

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ...........................................................................................1, 5, 6, 8, 9

*Carijano v. Occidental Petroleum Corp.*,
643 F.3d 1216 (9th Cir. 2011)...........................................................18, 19, 20, 21, 24

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
973 P.2d 527 (Cal. 1999) ...............................................................................................25

*Chaly-Garcia v. United States*,
508 F.3d 1201 (9th Cir. 2007).......................................................................................16

*Cheng v. Boeing Co.*,
708 F.2d 1406 (9th Cir. 1983).......................................................................................24

*CollegeSource, Inc. v. AcademyOne, Inc.*,
  2015 WL 5638104 (S.D. Cal. Sept. 24, 2015) ...................................................................11, 21

*CollegeSource, Inc. v. AcademyOne, Inc.*,
  653 F.3d 1066 (9th Cir. 2011).................................................................................................4

*Cook v. Champion Tankers AS*,
  2013 WL 1629136 (N.D. Cal. Apr. 16, 2013) ...................................................................20, 23

*Core-Vent Corp. v. Nobel Indus. AB*,
  11 F.3d 1482 (9th Cir. 1993)..............................................................................................11, 12

*Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*,
  472 F. Supp. 2d 1183 (S.D. Cal. 2007) ................................................................................22

*Craigslist, Inc. v. Naturemarket, Inc.*,
  694 F. Supp. 2d 1039 (N.D. Cal. 2010) .................................................................................7

*Dole Food Co. v. Watts*,
  303 F.3d 1104 (9th Cir. 2002)...........................................................2, 5, 9, 10, 11, 12, 18, 21, 22

*In re Facebook Biometric Info. Privacy Litig.*,
  185 F. Supp. 3d 1155 (N.D. Cal. 2016) .................................................................................8

*In re Facebook, Inc. S'holder Derivative Privacy Litig.*,
  367 F. Supp. 3d 1108 (N.D. Cal. 2019) ...............................................................................19

*Facebook, Inc. v. Profile Tech., Ltd.*,
  2013 WL 3815886 (N.D. Cal. July 22, 2013) .......................................................................8

*Filtrexx Int'l, LLC v. Truelsen*,
  2013 WL 587582 (N.D. Ohio Feb. 13, 2013) ......................................................................14

*Gates Learjet Corp. v. Jensen*,
  743 F.2d 1325 (9th Cir. 1984).................................................................................12, 18, 24

*Gillespie v. Prestige Royal Liquors Corp.*,
  183 F. Supp. 3d 996 (N.D. Cal. 2016) .................................................................................17

*Google, Inc. v. Eolas Techs. Inc.*,
  2014 WL 2916621 (N.D. Cal. June 24, 2014) ........................................................................6

*Hirsch v. Blue Cross, Blue Shield of Kansas City*,
  800 F.2d 1474 (9th Cir. 1986).............................................................................................11

*Honshu Shipping Co. v. M/V TRADE SALE*,
  2005 WL 3676097 (N.D. Cal. Apr. 28, 2005) .......................................................................19

*Howard v. First Horizon Home Loan Corp.*,
  2013 WL 3146792 (N.D. Cal. June 18, 2013) ......................................................................25

*Lamps Plus, Inc. v. Varela*,
  139 S. Ct. 1407 (2019) ........................................................................................................17

*Lou v. Belzberg*,
    834 F.2d 730 (9th Cir. 1987) ............................................................................................23

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.*,
    583 F.3d 656 (9th Cir. 2009) ............................................................................................23

*Lozano v. AT&T Wireless Servs, Inc.*,
    504 F.3d 718 (2007) ..........................................................................................................25

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) ..............................................................................................................13

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
    858 F.2d 509 (9th Cir. 1988) ............................................................................................13

*Menken v. Emm*,
    503 F.3d 1050 (9th Cir. 2007) ............................................................................................5

*Mitan v. Feeney*,
    497 F. Supp. 2d 1113 (C.D. Cal. 2007) ............................................................................17

*In re Montage Tech. Grp. Ltd. Sec. Litig.*,
    78 F. Supp. 3d 1215 (N.D. Cal. 2015) ..............................................................................20

*Nimbus Data Sys., Inc. v. Modus LLC*,
    2014 WL 7387200 (N.D. Cal. Dec. 29, 2014) ..................................................................10

*Nutrishare, Inc. v. BioRX, L.L.C.*,
    2008 WL 3842946 (E.D. Cal. Aug. 14, 2008) ....................................................................7

*Panavision Int'l, L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998) ..........................................................................................12

*Pirozzi v. Apple, Inc.*,
    966 F. Supp. 2d 909 (N.D. Cal. 2013) .....................................................................2, 24, 25

*Radiant Glob. Logistics, Inc. v. Drummond*,
    2018 WL 5276581 (W.D. Wash. Oct. 24, 2018) ..............................................................13

*Ridgway v. Phillips*,
    383 F. Supp. 3d 938 (N.D. Cal. 2019) ..............................................................................18

*Rosenthal-Zuckerman v. Epstein, Becker & Green Long Term Disability Plan*,
    39 F. Supp. 3d 1103 (C.D. Cal. 2014) ..............................................................................17

*Roth v. Garcia Marquez*,
    942 F.2d 617 (9th Cir. 1991) ............................................................................................10

*SEC v. Ross*,
    504 F.3d 1130 (9th Cir. 2007) ..........................................................................................13

*Sinatra v. Nat'l Enquirer, Inc.*,
    854 F.2d 1191 (9th Cir. 1988) ..........................................................................................11

*Sustainable Ranching Partners, Inc. v. Bering Pac. Ranches Ltd.*,
  2017 WL 4805576 (N.D. Cal. Oct. 24, 2017) ................................................................5

*Tuazon v. R.J. Reynolds Tobacco Co.*,
  433 F.3d 1163 (9th Cir. 2006) ..............................................................................20, 21

*United States v. Butler*,
  297 U.S. 1 (1936) ................................................................................................16

*Vivendi SA v. T-Mobile USA Inc.*,
  586 F.3d 689 (9th Cir. 2009) ..................................................................................23

*Walden v. Fiore*,
  571 U.S. 277 (2014) ...............................................................................................9

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
  903 F. Supp. 2d 880 (C.D. Cal. 2012) .....................................................................24

*Yang v. M/V Minas Leo*,
  1994 WL 36921 (N.D. Cal. Jan. 25, 1994) ...........................................................19, 20

**Statutes**

Cal. Bus. & Prof. Code § 17200 .................................................................................2

Cal. Penal Code § 502(e)(1) ....................................................................................21

**Rules**

Fed. R. Civ. P. 8(a)(2) ............................................................................................24

Fed. R. Civ. P. 26(b) ..............................................................................................22

**Other Authorities**

Hague Convention on the Taking of Evidence Abroad in Civil and Commercial
  Matters, 23 U.S.T. 2555 (1968) .............................................................................22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

# INTRODUCTION

Facebook brought this case to enforce its contractual rights after Rankwave refused to provide proof that its applications ("apps") on Facebook's Developer Platform complied with Facebook's Terms of Service ("Terms") and Platform Policy.  To access Facebook's Platform, Rankwave agreed that it would provide proof of compliance with Facebook's policies and that it would not use any data obtained from its apps for its own business purposes.  *See* Compl. ¶¶ 18-20, ECF No. 1-1 (June 27, 2019).  But when Facebook requested Rankwave's proof of compliance, Rankwave failed to respond and, eventually, provided false statements.  *Id.* ¶¶ 27-39.  As a result, Facebook filed the Complaint and requested injunctive relief requiring Rankwave to comply with the Terms and the Platform Policy, and to respond fully and accurately to Facebook's request for proof of compliance.  *Id.* ¶ 3.

Now, instead of simply providing proof that it complies with Facebook's polices, Rankwave has hired a U.S. law firm and moved to dismiss.  *See* Mot. to Dismiss, ECF No. 12 (July 12, 2019) ("Mot.").  The motion raises three arguments in an attempt to avoid discovery and further impede Facebook's contractual rights to determine whether Rankwave violated the Terms or the Platform Policy: (1) lack of personal jurisdiction, (2) *forum non conveniens*, and (3) failure to state a claim.  All three arguments fail.[1]

**(1) Jurisdiction.**  The Court has personal jurisdiction over Rankwave because Rankwave "reach[ed] out beyond [South Korea] and create[d] continuing relationships and obligations with citizens of [California]."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) (quotation marks omitted).  Hundreds of California residents installed Rankwave apps and granted Rankwave access to certain types of data on Facebook.  *See* Parekh Decl. ¶ 20.  Rankwave also targeted advertisements to users in San Francisco and Los Angeles.  *See* Parekh Decl. ¶¶ 25-27.  And Rankwave's business model heavily relied on continuously and programmatically engaging with Facebook's servers, systems, and other technologies in California—as well as the technologies of other California-based companies, such as Google and Apple.  *See* Do Decl. Ex. A (showing Rankwave's apps in the Google Play Store); Ex. B at 2 (showing availability of Rankwave's apps for iOS (Apple) and Android (Google)); Ex. C at 1-3

---

[1] Rankwave also baselessly suggests that Facebook is abusing the judicial system and previously agreed to Rankwave's data practices.  Mot. 2.  These false claims are Rankwave's thinly veiled attempts to deflect from its undisputed failure to provide proof of compliance with Facebook's policies.

(showing Rankwave's products' integration with Facebook); Ex. D at 4-5, 8, 11 (same); Ex. F at 8-14 (same). In addition, Rankwave consented to this Court's jurisdiction by accepting the Terms. Although Rankwave argues that the forum-selection clause in the Terms does not apply, that argument incorrectly rests on a version of the Terms that users in the *United States* accept. The *South Korean* Terms that Rankwave accepted contain a different forum-selection clause, and its language confirms that Rankwave consented to this Court's jurisdiction for purposes of this lawsuit.

**(2) Forum.** By agreeing to resolve this dispute "exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County," Duffey Decl. Ex. B § 4.4, Rankwave "waive[d] the right to challenge the preselected forum as inconvenient or less convenient," *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 64 (2013). Even if Rankwave had not agreed to this forum, its *forum non conveniens* argument still fails because Rankwave has not offered sufficient or clear evidence that this is an "exceptional" case that should be resolved in a foreign forum. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002) ("*Forum non conveniens* is an exceptional tool to be employed sparingly, not a doctrine that compels plaintiffs to choose the optimal forum for their claim." (quotation marks omitted)).

**(3) Merits.** The Complaint states a claim under California's Unfair Competition Law ("UCL"), which prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Because Rankwave's refusal to provide Facebook accurate information about its compliance with Facebook's policies has harmed Facebook without creating any offsetting benefit, the Complaint plainly describes an "unfair" practice under the "intentionally broad" sweep of the UCL. *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 920 (N.D. Cal. 2013) (Tigar, J.).

The Court should deny Rankwave's motion and proceed to the merits.

## BACKGROUND

All Facebook users must accept and agree to comply with the Terms. Compl. ¶ 13; Duffey Decl. ¶ 3. Rankwave first accepted the Terms when it created a Facebook account in February 2012, and Rankwave continued to operate an account until Facebook filed this lawsuit in May 2019. Compl. ¶¶ 19, 47; Parekh Decl. ¶ 24. Thus, "[a]t all relevant times, Rankwave was a Facebook user that agreed to and was bound by the [Terms]." Compl. ¶ 19.

Users that create an app on Facebook are called "developers."  Compl. ¶ 11; Parekh Decl. ¶ 10. All developers agree to comply with the Platform Policy as a condition of receiving access to the Facebook Platform—the technical framework that enables developers to create apps that interact with Facebook's core systems and features.[2]  Compl. ¶¶ 13, 15; *see* Parekh Decl. ¶ 14.  Developers must accept the Platform Policy every time they create a new app.  Parekh Decl. ¶ 16.

Rankwave represents that it had only "three downloadable apps," Mot. 8, apparently counting only those apps that were available for download on the Google Play or Apple App stores, *see* Park Decl. ¶ 8, ECF No. 12-1 (July 12, 2019).  But Rankwave in fact created and operated more than thirty apps using Facebook's Platform between 2011 and May 2019, Compl. ¶¶ 2, 20-21; Parekh Decl. ¶ 19, some of which were available on Facebook and designed to analyze Facebook data,[3] *see* Do Decl. Ex. C, at 2-3.  And Rankwave claims that its "three downloadable apps" had a total of 71,618 users, Mot. 8, but that figure does not include users who installed Rankwave's apps directly from Facebook, Parekh Decl. ¶ 20.

Rankwave's apps included business-to-business ("B2B") apps and consumer apps designed to track posts and comments on Facebook.  Businesses could use Rankwave's B2B apps to track and analyze activity on their respective Facebook pages.  Compl. ¶ 22; Do Decl. Ex. I.  Likewise, consumers could use Rankwave's consumer apps to measure their popularity on Facebook—i.e., how frequently other users interact with the consumer's Facebook page, Do Decl. Exs. A, C.  Rankwave operated apps until Facebook filed this lawsuit in May 2019.  *See* Compl. ¶¶ 20, 35; Parekh Decl. ¶ 24.

The Platform Policy that Rankwave repeatedly accepted required Rankwave to respond to Facebook's requests for proof of compliance with its policies and to undergo an audit to confirm compliance:

---

[2] The technical components of the Platform include "application programming interfaces" or "APIs"—which facilitate communication between different types of software—as well as authentication mechanisms, plugins, and other distinct Facebook computer protocols.  *See* Parekh Decl. ¶ 6-7.  The Platform also supports "login integration," which allows an app to integrate a user's preexisting Facebook credentials to streamline the creation, login, permissions, and personalization process for an app.  *See id.* ¶ 12.  Apps developed on the Platform are generally integrated into Facebook the same way that Facebook's own apps are (i.e., Photos and Notes), and can be used by Facebook users only while they are on the Facebook website or mobile app.

[3] Facebook users can visit Facebook's app center or page to download and install apps while logged into Facebook.

Gibson, Dunn &
Crutcher LLP

[Facebook] or an independent auditor acting on our behalf may audit your app, systems, and records to ensure your use of Platform and data you receive from us is safe and complies with our Terms, and that you've complied with our requests and requests from people who use Facebook to delete user data obtained through our Platform.  If requested, you must provide proof that your app complies with our terms.

Compl. ¶ 18.

Rankwave refused to comply with its contractual obligations after Facebook began investigating whether Rankwave had used any user data (as opposed to Facebook pages data) to provide marketing and advertising services in violation of the Platform Policy.  *See* Compl. ¶¶ 26-39.  Facebook also was investigating whether user data associated with Rankwave's apps was part of Rankwave's valuation when a large Korean company acquired Rankwave in May 2017.  *See id.* ¶¶ 24-25.[4]

Specifically, Rankwave (i) failed to respond to Facebook's requests for proof that it complied with Facebook's policies, Compl. ¶¶ 1, 27-29, 35, 39; (ii) refused to agree to an audit, *id.* ¶¶ 1, 35, 39; and (iii) made false and misleading statements in response to Facebook's requests for information, *id.* ¶¶ 33, 35.  Rankwave ignored Facebook's request for information on January 17, 2019, and then ignored a follow-up request on January 29.  *Id.* ¶¶ 29, 27-29.  On February 13, Facebook again attempted to exercise its right to audit Rankwave's data practices via a cease-and-desist letter that sought proof of Rankwave's compliance with Facebook's policies.  *Id.* ¶ 30.  Rankwave responded four days later and claimed it needed more time to provide the requested information.  *Id.* ¶ 33.  Facebook thereafter repeatedly extended Rankwave's deadline, *id.* ¶¶ 34, 36, 38, but Rankwave never has provided the requested information or submitted to an audit, *id.* ¶¶ 34, 39.

## ARGUMENT

### I.    The Court Has Personal Jurisdiction Over Rankwave.

When a defendant's motion to dismiss for lack of personal jurisdiction is based on written materials, "the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion."  *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (quotation marks omitted).  "That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant."  *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  When

---

[4] Rankwave is not merely a "small" South Korean company, Mot. 2; it is a subsidiary of a large South Korean entertainment company that acquired Rankwave in May 2017, *see* Compl. ¶¶ 24-25.

Gibson, Dunn & Crutcher LLP

1   resolving the motion, the Court accepts "uncontroverted allegations in the complaint . . . as true" and

2   resolves in the plaintiff's favor all "[c]onflicts between the parties over statements contained in

3   affidavits." *Dole Food*, 303 F.3d at 1108.

4       This Court has personal jurisdiction over Rankwave for two independent reasons:

5   (1) Rankwave's contacts with California gave rise to this dispute and subject Rankwave to the Court's

6   specific jurisdiction, and (2) Rankwave consented to jurisdiction by accepting the Terms.

7   **A.      The Court Has Specific Jurisdiction Over Rankwave Based On Rankwave's**
    **          Choice To Create Meaningful Contacts With California.**

8       Because Rankwave chose to "reach out" and "create continuing relationships and obligations"

9   in California, this Court has specific jurisdiction over Rankwave to resolve disputes arising from those

10  California contacts. *Burger King*, 471 U.S. at 473 (quotation marks omitted).[5]

11      "California's long-arm statute is co-extensive with federal standards," and so "a federal court

12  may exercise personal jurisdiction if . . . the nonresident Defendant has at least minimum contacts with

13  the relevant forum such that the exercise of jurisdiction does not offend traditional notions of fair play

14  and substantial justice." *Sustainable Ranching Partners, Inc. v. Bering Pac. Ranches Ltd.*, 2017 WL

15  4805576, at *2 (N.D. Cal. Oct. 24, 2017) (Tigar, J.) (quotation marks and citations omitted).  This

16  inquiry asks (1) whether the defendant "purposefully avail[ed] himself of the privilege of conducting

17  activities in the forum thereby invoking the benefits and protections of its laws;" (2) whether the claim

18  "arises out of or relates to the defendant's forum-related activities;" and (3) whether exercising

19  jurisdiction over a defendant "comport[s] with fair play and substantial justice, i.e. it must be

20  reasonable." *Id.* at *3.  "[I]f the plaintiff succeeds in satisfying both of the first two prongs, the burden

21  then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be

22  reasonable." *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007) (quotation marks omitted).

23  **1.      Rankwave Purposefully Availed Itself Of The Benefits And Protections Of**
    **          A California Forum.**

24      To satisfy the purposeful availment requirement, "[i]t is not required that a defendant be

25  physically present within, or have physical contacts with, the forum." *Ballard*, 65 F.3d at 1498.

26  Instead, "parties who reach out beyond one state and create continuing relationships and obligations

---

[5] Facebook takes no position at this time on whether this Court has general jurisdiction over Rankwave.

with citizens of another state are subject to regulation and sanctions in the other [s]tate for the consequences of their activities." *Burger King*, 471 U.S. at 473 (quotation marks omitted).  That is the case here.   By seeking "the manifold benefits that would derive from affiliation with a[n] . . . organization" based in California, Rankwave should have anticipated that it could be "called to account [here]" for its misconduct.  *Id.* at 480.

### (i)       Rankwave Accepted The Benefits Of California Law.

"[Rankwave] consented to California law in the choice of law provision in the [Terms], which demonstrates that [Rankwave] has chosen to avail itself of the benefits and protections of California's laws." *Google, Inc. v. Eolas Techs. Inc.*, 2014 WL 2916621, at *3 (N.D. Cal. June 24, 2014) (Tigar, J.).  Further, even if the forum-selection clause in the Terms applies only to lawsuits that Rankwave files *against* Facebook—which it does not, *see infra* Part I.B.—Rankwave at the very least consented to resolving *those* types of disputes in specified California courts, reinforcing its "deliberate affiliation with" California and confirming "the reasonable foreseeability of possible litigation there." *Burger King*, 471 U.S. at 481-82.

### (ii)      Rankwave's Business Model Depends On Facebook And Other California Companies.

Rankwave's business was built on its "continuing relationships and obligations" with Facebook and Facebook's California-based technologies, as well as other California-based businesses.  *Burger King*, 471 U.S. at 473.  For example, Rankwave accepted the Terms and the Platform Policy in order to obtain access to Facebook's Platform; used the Platform for more than six years to create and operate at least thirty apps; used its apps to collect data from users around the world, including hundreds in California; and then commercialized that data by deploying it in advertising and marketing services sold to customers.  *See supra* pp. 2-4; Compl. ¶¶ 1, 24-26.

Some of Rankwave's marketing materials included pictures of Mark Zuckerberg and used a logo from an annual developer conference that Facebook hosts in California called "F8."  *See* Do Decl. Exs. D at 4, E at 9, F at 8.  Moreover, Rankwave's website and other official business materials also repeatedly promoted its purported expertise in navigating Facebook's APIs, claiming that Rankwave had a competitive edge over other developers, *see* Do Decl. Ex. C at 2-3; Ex. F at 8-10; Rankwave admits that it marketed apps and made them available for download on the Google Play and Apple App

Gibson, Dunn &
Crutcher LLP

stores, which are operated by two other California-based companies (Google and Apple), *see* Mot. 8; and a number of Rankwave's B2B and consumers apps were designed solely for their users to track and analyze Facebook activity, and served no other purpose, Compl. ¶ 22.  In short, it appears that Rankwave depended *entirely* on California-based businesses—Facebook, Google, and Apple—to develop, distribute, and operate its apps.

<div align="center">

**(iii)**   **Hundreds Of Californians Used Rankwave's Apps, And Rankwave Advertised In California.**

</div>

Although Rankwave admits that hundreds of users in the United States downloaded its apps, *see* Mot. 9, it fails to disclose that its "Rankwave" app was downloaded by 322 users *in California*, *see* Parekh Decl. ¶ 20.   Moreover, Rankwave purchased at least one advertisement on Facebook that targeted users in Los Angeles and San Francisco.  *See* Parekh Decl. ¶¶ 25-27.  Where, as here, "the defendant conducts online business transactions over the Internet with residents of the forum[,] . . . jurisdiction is almost always proper because the defendant has asserted itself into the forum and made actual contact, often commercial, with a forum resident."  *Nutrishare, Inc. v. BioRX, L.L.C.*, 2008 WL 3842946 (E.D. Cal. Aug. 14, 2008) (quotation marks omitted); *see also Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1053 (N.D. Cal. 2010) (exercising jurisdiction over defendants because, among other reasons, they "maintained a commercial website that was interactive and open to commerce with California residents").

<div align="center">

**(iv)**   **Rankwave Used Computer Infrastructure Located In California To Operate Its Apps And Obtain Facebook Data.**

</div>

To operate and grow its business, Rankwave required ongoing integration with Facebook's servers and app-development tools, including Facebook's APIs, which are designed and maintained largely from California by Facebook engineers.  Parekh Decl. ¶ 8.  In furtherance of its business relationship with Facebook, Rankwave also communicated with Facebook's employees in California when it submitted applications seeking permission to request data from users in order to enhance the functionality of its apps, thereby improving its products and developing its business.  *See id.* ¶ 23. Rankwave also used California-based infrastructure to host its website rankwave.com.  Rankwave owned and operated the domain rankwave.com, which from October 2012 to July 2019 used Amazon Web Services ("AWS") hosting services and servers located in San Jose, California.  Do Decl. ¶ 8.

1

* * *

2   Given all of these contacts with California, Rankwave's suggestion that it somehow was

3   unaware until 2018 that it was "interacting with Facebook out of California" is simply not credible.[6]

4   Mot. 13.  And its assertion that it had "no contacts with California" is clearly false.  Mot. 14.  Nor is it

5   true that Rankwave "developed and marketed each and every one of its apps . . . in the Korean

6   language."  Park Decl. ¶ 4.  In reality, Rankwave maintained an English version of its website, *see* Do

7   Decl. Exs. B, C;  marketed its products in English, *see* Do Decl. Exs. D, F;, and developed and marketed

8   at least one app whose privacy policy was available in English, *see* Do. Decl. Exs. H, I, J.  The

9   "Rankwave" app also appeared in the English language in the Google Play store.  Do Decl. Ex. A.

10   The cases Rankwave relies on in support of its argument against purposeful availment are easily

11   distinguishable, as they all involve substantially fewer contacts between the forum and the out-of-state

12   defendant.  *See* Mot. 11-13.  In *Axiom Foods, Inc. v. Acerchem International, Inc.*, 874 F.3d 1064 (9th

13   Cir. 2017), for example, the defendant merely "sent one newsletter to a maximum of ten recipients

14   located in California, in a market where [the defendant] has no sales or clients," and the alleged

15   misconduct "barely connected [the defendant] to California residents, much less to California itself."

16   *Id.* at 1071.  Likewise, in *180Squared Inc. v. Allo Twin Cities LLC*, 2013 WL 12146129 (N.D. Cal. Jan.

17   18, 2013), the defendant's sole contact with California was executing a contract—without a forum-

18   selection clause—that required the California plaintiff to perform work for the defendant *in Nebraska*.

19   *Id.* at *3.  Here, Rankwave not only contracted with a California company, but it also built a business

20   based on repeatedly reaching into California to access Facebook's Platform, APIs, and user data,

21   thereby seeking "the manifold benefits that would derive from affiliation with a[n] . . . organization"—

22   and hundreds of app users—based here.  *Burger King*, 471 U.S. at 480.

23   Finally, *Walden v. Fiore*, 571 U.S. 277 (2014), does not "preclude[ ]" this Court's jurisdiction

24   over Rankwave.  Mot. 13.  In fact, *Walden* refused to even address the situation where, as here, a

25

26   [6] Rankwave's references to "Facebook Ireland" are red herrings.  *See* Mot. 6, 12, 13.  Given all of
    Rankwave's California contacts, Rankwave "most certainly knew that [it] was affiliating [itself] with
27   an enterprise based primarily in" California.  *Burger King*, 471 U.S. at 480.  Moreover, the South
    Korean Terms in effect when Rankwave breached its contract with Facebook constituted an agreement
28   between Rankwave and Facebook, Inc., not Facebook Ireland.  *See* Duffey Decl. Ex. B § 4.5.1; *see
    also In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016);
    *Facebook, Inc. v. Profile Tech., Ltd.*, 2013 WL 3815886, at *3 (N.D. Cal. July 22, 2013).

defendant acts primarily over the Internet:  "this case does not present the very different questions whether and how a defendant's virtual 'presence' and conduct translate into 'contacts' with a particular State."  *Id.* at 290 n.9.  Regardless, as Rankwave recognizes, *Walden* reiterated that the "minimum contacts" analysis "look[s] to the defendant's own contacts with the forum," Mot. 13 (quoting *Axiom Foods*, 874 F.3d at 1069-70), meaning that the defendant's relationship with the forum "must arise out of contacts that the defendant *himself* creates," *Walden*, 571 U.S. at 284-86 (quotation marks omitted). Here, the Court's jurisdiction over Rankwave does not rest on its mere knowledge that Facebook is a California company, but instead rests on its decision to create contacts with California by, among other things, building its business on the backs of California companies; developing apps (i.e., software) that could only operate using Facebook's Platform; contracting with a California resident; agreeing to a California choice-of-law clause and a California forum-selection clause; continuously interacting with people and technologies in California; running apps that hundreds of users in California downloaded; and so on.  These actions show that Rankwave chose to create "meaningful" contacts with California, *id.* at 290, thus satisfying the purposeful availment prong of the specific jurisdiction analysis.

### 2.  This Suit Arises Out Of Rankwave's Contacts With California.

A lawsuit arises out of a defendant's contacts with the forum state if those contacts "are integral and essential parts" of the plaintiff's claim. *Dole Food*, 303 F.3d at 1114.  Facebook's claims arise out of Rankwave's failure to provide proof of compliance with Facebook's policies and its efforts to rebuff Facebook's contractual rights to discover the complete nature of Rankwave's data practices involving Facebook users, including hundreds in California.  Specifically, Count 1 (breach of contract) and Count 2 (breach of the implied covenant of good faith and fair dealing) arise from duties Rankwave undertook—and breached—when it contracted with Facebook in order to develop apps for Facebook users and to market and distribute them on Facebook, the Google Play store, and the Apple App store. Count 3 (violation of the UCL) similarly arises from harms flowing from Rankwave's refusal to provide proof of compliance with Facebook's policies.  *See infra* Part III.  All three claims thus arise out of Rankwave's contacts with California.

Citing *Nimbus Data Systems, Inc. v. Modus LLC*, 2014 WL 7387200 (N.D. Cal. Dec. 29, 2014), Rankwave argues that there is no "direct nexus" between its California contacts and Facebook's claims.

Mot. 14. But the plaintiff in *Nimbus* did not allege that the defendant breached either of the two agreements that established contacts between the defendant and the forum state. *See Nimbus*, 2014 WL 7387200, at *6. Facebook, on the other hand, *has* alleged that Rankwave violated the contracts underlying its connections to California and that Rankwave abused Facebook's California-based Platform. *See* Compl. ¶¶ 46-56. In other words, *but for* Rankwave's connections to California, Facebook would not have been injured and would not have filed this lawsuit.

### 3.    Exercising Jurisdiction Over Rankwave Would Not Be Unreasonable.

Because Facebook has satisfied the first two prongs of the jurisdictional analysis and made a prima facie showing that exercising personal jurisdiction over Rankwave is constitutional, Rankwave faces the "*heavy burden*" of "overcom[ing] the *strong presumption* of reasonableness of the assertion of personal jurisdiction." *Dole Food*, 303 F.3d at 1117 (emphases added). To meet this burden, Rankwave "must present a compelling case" that the balance of seven factors tips in its favor: (1) the extent of Rankwave's "purposeful injection" into California; (2) the burden on Rankwave "of defending in the forum;" (3) "the extent of conflict with the sovereignty" of South Korea; (4) South Korea's "interest in adjudicating the dispute;" (5) "the most efficient judicial resolution of the controversy;" (6) "the importance of the forum" to Facebook's "interest in convenient and effective relief;" and (7) "the existence of an alternative forum." *Id.* at 1114 (quotation marks omitted). Rankwave has not shown that these seven factors weigh in its favor, let alone compellingly so.

(1) *Purposeful injection.* This factor weighs *against* Rankwave because, as described above, Rankwave repeatedly created contacts with California and integrated its apps (i.e., software) with Facebook's California-based systems and services. In light of that purposeful availment, "there is no need" to reanalyze this factor. *Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991).

(2) *Burden on the defendant.* Rankwave's only argument on this factor is that it is incorporated in another country, Mot. 15, but being a foreign defendant "is not dispositive" of this factor, and "[m]odern advances in communications and transportation have significantly reduced the burden of litigating in another country," *Dole Food*, 303 F.3d at 1115 (quotation marks omitted). Indeed, even in *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482 (9th Cir. 1993)—the principal case Rankwave relies on—the court found that the burden on two Swedish professors with no ties to California did *not*

"weigh[ ] heavily" against the reasonableness of California's jurisdiction.  *Id.* at 1483-84, 1488.  Only if the inconvenience of being a foreign defendant "is so great as to constitute a deprivation of due process" can this factor "overcome clear justifications for the exercise of jurisdiction."  *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1481 (9th Cir. 1986).  Rankwave does not even try to make that showing.  Nor could it.  This factor also weighs strongly against Rankwave.

(3) *Conflict with the sovereignty of South Korea.*  Rankwave offers only generalities about the importance of respecting international sovereignty, *see* Mot. 15, but it never articulates how exercising personal jurisdiction in this case would conflict with the sovereignty of South Korea.  Although Rankwave is an "alien defendant," *id.*, that "is by no means controlling" on this factor because, if "given controlling weight, it would always prevent suit against a foreign national in a United States court," *Ballard*, 65 F.3d at 1501 (quotation marks omitted).  Nor is it true that Rankwave "has no US-based relationships."  Mot. 15.  Rankwave spent years in a substantial business relationship with Facebook—to say nothing about its relationship with Google, Apple, and the hundreds of California users who downloaded its apps.  *See supra* Part I.A.1.  This factor also weighs against Rankwave.

(4) *Forum state's interest.*  Rankwave ignores this factor—for good reason.  Because California has a "strong interest in providing an effective means of redress for its residents," *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1200 (9th Cir. 1988), and a strong interest in protecting data privacy rights, *see CollegeSource, Inc. v. AcademyOne, Inc.*, 2015 WL 5638104, at *25 (S.D. Cal. Sept. 24, 2015), this factor weighs strongly against Rankwave.

(5) *Most efficient forum.*  Rankwave asserts that South Korea is the most efficient forum because all of *its* employees, witnesses, and documents are in that country, *see* Mot. 15-16, but *Facebook* has relevant employees, witnesses, and documents in California, and Facebook's injuries occurred here.  Regardless, even if South Korea were a more efficient forum, "[t]his factor . . . is no longer weighed heavily given the modern advances in communication and transportation."  *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998).

(6) *Plaintiff's interest.*  Rankwave halfheartedly argues that this forum is unimportant to Facebook and that litigating in South Korea would be no less convenient.  *See* Mot. 16.  That is wrong.  Far from being Facebook's "mere preference," *id.* (quoting *Core-Vent*, 11 F.3d at 1490), this is

1   Facebook's home forum; Facebook's witnesses and documents are here; and this forum is most familiar

2   with the governing California law.  *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1333 (9th Cir.

3   1984) ("The district court in Arizona is the more efficient forum to resolve such interpretations of

4   Arizona law.").  Moreover, Facebook would have more restricted discovery rights, weaker protections

5   for the attorney-client privilege, no right to a jury trial, and no right to compulsory process in South

6   Korea.  *See* Chung Decl. ¶¶ 4-12, 15.  This factor weighs strongly against Rankwave.

7          (7) *Existence of alternative forum.*  The only argument Rankwave makes on this prong is that

8   "Facebook's claims could be brought in South Korea," Mot. 16, but Rankwave has failed to support

9   that blanket assertion with any evidence.  *See infra* Part II.A.  Relying on *Core-Vent*, Rankwave also

10  argues that Facebook has the burden of *disproving* the availability of an alternative forum, Mot. 16,

11  which flips Rankwave's burden of showing that the exercise of personal jurisdiction would be

12  unreasonable.  Although the cases are "split" on the issue of which party bears the burden of proving

13  (or disproving) this factor, *Dole Food*, 303 F.3d at 1116, the Ninth Circuit confirmed in a case

14  postdating *Core-Vent* that the burden of proving this factor—like all other six—remains with the

15  defendant, *see Ballard*, 65 F.3d at 1495.

16         The balance of all six factors weighs heavily in favor of finding that exercising personal

17  jurisdiction over Rankwave would be reasonable.  Rankwave therefore has not met its burden of

18  proving that requiring it to litigate in this Court would be unreasonable.  Specific jurisdiction exists,

19  and the Court should deny the motion to dismiss.

20         **B.     Rankwave Consented To This Court's Jurisdiction.**

21         In addition to Rankwave's sufficient contacts with California, the Court also has jurisdiction

22  over Rankwave because Rankwave accepted the forum-selection clause in the Terms.

23         "[A]ccepting a forum selection clause evidences consent to both venue and personal jurisdiction

24  in that forum."  *Radiant Glob. Logistics, Inc. v. Drummond*, 2018 WL 5276581, at *4 (W.D. Wash.

25  Oct. 24, 2018) (citing *SEC v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007)).  Forum-selection clauses are

26  prima facie valid and are enforced "absent a strong showing by the party opposing the clause 'that

27  enforcement would be unreasonable or unjust, or that the clause is invalid for such reasons as fraud or

28  overreaching.'"  *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 512 (9th Cir. 1988) (quoting

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).  The party opposing a forum-selection clause must "show that [a] trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court."  *M/S Bremen*, 407 U.S. at 18.

Rankwave does not argue that the forum-selection clause in the Terms is unjust, invalid, or nonbinding, but instead argues that this case falls outside the clause's scope.  Not so.  The forum-selection clause in the South Korean Terms that Rankwave accepted provides:

> If you are a consumer, or where required by applicable law, the laws of the country in which you reside will apply to any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms or the Facebook Products ("claim"), and you may resolve your claim in any competent court in that country that has jurisdiction over the claim.  ***In all other cases, you agree that the claim must be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County, that you submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim***, and that the laws of the State of California will govern these Terms and any claim, without regard to conflict of law provisions.

Duffey Decl. Ex. B § 4.4 (emphasis added).

A plain reading of this language shows that Rankwave consented to this Court's jurisdiction.  The first sentence applies to "consumers" that file suit "against" Facebook.  Because Rankwave is not a consumer and has not filed suit against Facebook, the first sentence does not apply.  Thus, the second sentence—which applies "in all other cases"—controls here, meaning that this litigation "must be resolved" in this Court or a specified California state court.

Textual differences between the first and second sentences confirm this reading of the forum-selection clause.  The first sentence (not applicable here) specifies *who* must initiate litigation for the clause to apply, whereas the second sentence (applicable here) does not.  Specifically, the first sentence uses the word "you" in the active voice to identify who must initiate litigation:

> If you are a consumer, or where required by applicable law, the laws of the country in which you reside will apply to any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms or the Facebook Products ("claim"), and *you* may resolve *your claim* in any competent court in that country that has jurisdiction over the claim.

Duffey Decl. Ex. B § 4.4.  By contrast, the second sentence of the clause dictates that ***all other cases*** must be resolved in a specified California court, and that the user (Rankwave) consents to the court's jurisdiction for purposes of the litigation:

*In all other cases,* you agree that the claim *must be resolved* exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County, that you submit to the personal jurisdiction of either of these courts *for the purpose of litigating any such claim*, and that the laws of the State of California will govern these Terms and any claim, without regard to conflict of law provisions.

*Id.* (emphasis added).

Where, as here, a contract uses "different language to address parallel issues[,] it is reasonable to infer that [the parties] intend this language to mean different things." *Alday v. Raytheon Co.*, 693 F.3d 772, 784 n.10 (9th Cir. 2012) (quotation marks omitted); *cf. Bates v. United States*, 522 U.S. 23, 29-30 (1997) ("Where Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quotation marks omitted)).  Accordingly, by limiting the first sentence to only those suits filed by *the user* "against" Facebook, yet omitting the same limitation for "all other cases," the forum-selection clause requires that a company like Rankwave consent to this Court's personal jurisdiction regardless of whether Rankwave or Facebook files suit.

For the same reasons, Rankwave's citation to *Filtrexx International, LLC v. Truelsen*, 2013 WL 587582 (N.D. Ohio Feb. 13, 2013), actually undercuts its argument that the forum-selection clause is limited to claims brought "against Facebook," Mot. 17 (emphasis omitted).  Like the first sentence of the forum-selection clause of the Terms, the forum-selection clause in *Filtrexx* identified *who* must file suit (the defendant) for the clause to apply:  "[The defendant] agrees to commence and maintain any action *it undertakes* in connection with this Agreement in a [specified court]."  *Id.* at *4 (emphasis added).  That language contrasts with the second sentence of the forum-selection clause applicable here, which speaks in passive voice about *how* certain disputes "*will be resolved*" without indicating *who* must file suit to resolve them.  Duffey Decl. Ex. B § 4.4 (emphasis added).

This interpretation of the South Korean Terms is equitable and internally consistent.  When South Korean users file an action claiming that they were injured by Facebook (as a consumer), they get the benefit of their home forum.  Likewise, when Facebook files an action claiming that it was injured by a South Korean user, Facebook gets the benefit of its home forum.

Gibson, Dunn & Crutcher LLP

This interpretation also is consistent with the forum-selection clause in Facebook's Commercial Terms, which apply to "access or use of the Facebook Products . . . for any business or commercial purpose." Duffey Decl. Ex. C at 1. The forum-selection clause in the Commercial Terms provides:

> If you reside outside the US or your business is located outside the US: You agree that any claim, cause of action, or dispute *you have against us* that arises out of or relates to any access or use of the Facebook Products for business or commercial purposes must be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County, that you submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim, and that the laws of the State of California will govern these Commercial Terms and any such claim, without regard to conflict of law provisions.

*Id.* § 4(b) (emphasis added). This clause is explicitly limited to actions filed *against* Facebook, and it *omits* the "all other cases" language included in the forum-selection clause in the Terms. Accordingly, when Facebook wants to apply a forum-selection clause *only* to cases that users bring "against" Facebook, it knows how to do so because it did so in the Commercial Terms. The South Korean Terms, however, include additional language that govern "all other cases"—like this one.

Rankwave nevertheless maintains that the forum-selection clause in the Terms is "inapplicable" because it applies "only to claims brought by Rankwave . . . ***against Facebook***, not to claims brought by Facebook against Rankwave." Mot. 16-17. But that argument is a non-starter because it relies on the *U.S. version* of the Terms, not the South Korean version to which Rankwave agreed. The inapplicable U.S. version—like the Commercial Terms—does not contain the critical second sentence in the forum-selection clause that governs "all other cases." The forum-selection clause in the U.S. version of the Terms provides:

> For any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms or the Facebook Products ("claim"), you agree that it will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County. You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim, and that the laws of the State of California will govern these Terms and any claim, without regard to conflict of law provisions.

Duffey Decl. Ex. A § 4.4. The inclusion of additional language for "all other cases" in the South Korean forum-selection clause, and the omission of that language from this U.S. forum-selection clause, makes sense: Facebook is concerned with the burdens of foreign-based litigation. That concern

1   does not exist if the opposing party is in the United States, but it does exist where, as here, the opposing

2   party is in a foreign country.

3        If the second sentence of the forum-selection clause in the Terms were limited to claims

4   "against" Facebook even though that word appears only in the first sentence, the *only* difference

5   between the first and second sentences would be that the first applies to consumers and the second

6   applies to non-consumers (i.e., commercial entities).  The second sentence, however, does not begin

7   with the phrase "If you are not a consumer," which would be the obvious way to draw that singular

8   distinction.  Instead, it begins with the phrase "in all other *cases*," reinforcing that the first sentence

9   applies to *cases* that consumers bring against Facebook, whereas the second sentence applies to all

10  "other" types of cases—e.g., cases that Facebook initiates.  Put another way, interpreting the two

11  sentences as differing solely based on whether a consumer or a non-consumer filed suit "against"

12  Facebook would improperly replace the "in all other cases" language with "if you are not a consumer."

13  But if that is what the contract meant to say, it "would have said so explicitly."  *Am. Student Fin. Grp.,*

14  *Inc. v. Dade Med. Coll., Inc.*, 180 F. Supp. 3d 671, 681 n.6 (S.D. Cal. 2015).

15       For the same reason, Rankwave's interpretation makes the second sentence of the forum-

16  selection clause superfluous.  Again, the Commercial Terms contain a forum-selection clause that

17  *explicitly* covers non-consumer claims "against" Facebook.  Duffey Decl. Ex. C at 1.  If the second

18  sentence of the clause in the Terms served that exact same purpose—i.e., if it were limited to non-

19  consumer claims "against" Facebook—the sentence would be redundant and meaningless.  But the

20  sentence "cannot be meaningless, else [it] would not have been used."  *United States v. Butler*, 297

21  U.S. 1, 65 (1936).  To give effect to that sentence, then, it must be read as applying to suits *in addition*

22  *to* those that non-consumers file against Facebook, including suits that Facebook files against a

23  company like Rankwave.  *See, e.g.*, *Chaly-Garcia v. United States*, 508 F.3d 1201, 1204 (9th Cir. 2007)

24  (refusing to interpret a contract in a way that would read an "entire . . . clause out of [it]").

25       Finally, there is no need for the Court to apply the doctrine of *contra proferentem*.  *See* Mot.

26  19.  That doctrine "applies only as a last resort when the meaning of a provision remains ambiguous

27  after exhausting the ordinary methods of interpretation.  At that point, *contra proferentem* resolves the

28  ambiguity against the drafter."  *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417 (2019) (quotation

marks and citation omitted); *see also Rosenthal-Zuckerman v. Epstein, Becker & Green Long Term Disability Plan*, 39 F. Supp. 3d 1103, 1108 (C.D. Cal. 2014) ("[C]ourts apply *contra proferentem* only if other rules of contract interpretation have failed to resolve the disputed issue."). Here, as explained above, the language of the forum-selection clause in the South Korean Terms is clear. Because the "ordinary methods of interpretation" confirm that Rankwave consented to this Court's jurisdiction, there is no need to apply a rule of "last resort." *Lamps Plus*, 139 S. Ct. at 1417. The Court should deny Rankwave's motion to dismiss.

### C.      In The Alternative, The Court Should Require Jurisdictional Discovery.

If the Court is not persuaded that it has jurisdiction over Rankwave, Facebook respectfully requests the opportunity to conduct jurisdictional discovery while the motion to dismiss is pending. "[T]he Court has broad discretion to permit jurisdictional discovery, which should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Gillespie v. Prestige Royal Liquors Corp.*, 183 F. Supp. 3d 996, 1003 (N.D. Cal. 2016) (quotation marks omitted). A plaintiff does not have to make a prima facie showing of jurisdiction to obtain jurisdictional discovery. *Mitan v. Feeney*, 497 F. Supp. 2d 1113, 1119 (C.D. Cal. 2007). Rather, "some evidence tending to establish personal jurisdiction over the defendant" will suffice. *Id*. (quotation marks omitted).

At the very least, "some evidence" indicates that this Court has jurisdiction over Rankwave. Thus, as an alternative to dismissal, the Court should allow Facebook to conduct jurisdictional discovery of, among other things: (i) Rankwave emails and other communications acknowledging that Rankwave knew it was using and interacting with Facebook's California-based technology, including documentation regarding Rankwave's development of apps specifically for the Facebook Platform; (ii) communications between Rankwave and any California users who installed its apps, as well as Rankwave's data practices relating to those users; (iii) contracts between those California users and Rankwave, including any polices the users were required to accept in order to download or use a Rankwave app; (iv) Rankwave marketing materials and other documents demonstrating that Rankwave's business model relied on access to Facebook's California-based technology; and (v) information about Rankwave's use of computer systems in California to operate apps.

**II.    This Court Is The Proper Forum For Resolving These Disputes.**

Rankwave argues in the alternative that the Court should dismiss this case based on the doctrine of *forum non conveniens*.  Mot. 19.  This argument also fails.

"The doctrine of *forum non conveniens* is a drastic exercise of the court's 'inherent power.'" *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011).  Because dismissing a case from the plaintiff's chosen forum is such a "harsh[ ]" result, courts "treat[ ] *forum non conveniens* as an exceptional tool to be employed sparingly, and not a doctrine that compels plaintiffs to choose the optimal forum for their claim."  *Id.* (quotation marks omitted).  "[T]he plaintiff's choice of forum should rarely be disturbed."  *Gates Learjet*, 743 F.2d at 1334-35 (quotation marks omitted).

A party seeking dismissal on grounds of *forum non conveniens* must make "a clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience."  *Bos. Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1206 (9th Cir. 2009).  This factual showing must "strongly" favor the defendant when the plaintiff has sued in its home forum.  *Jensen*, 743 F.2d at 1334-35.  "The mere fact that a case involves conduct or [parties] from overseas is not enough for dismissal."  *Ridgway v. Phillips*, 383 F. Supp. 3d 938, 941 (N.D. Cal. 2019).

In the typical case not involving a forum-selection clause, the party moving to dismiss on grounds of *forum non conveniens* "bears the burden" of offering facts demonstrating that (1) "an adequate alternative forum" exists, (2) the balance of "private . . . interest factors" favors dismissal, and (3) the balance of "public interest factors" also favors dismissal.  *Carijano*, 643 F.3d at 1224.  The private interest factors generally ask whether requiring the parties to litigate in a certain forum would be convenient and fair, whereas the public interest factors generally ask whether the forum has an interest in resolving the dispute and could do so expeditiously.  *See Dole Food*, 303 F.3d at 1119.

If the parties have agreed to a forum-selection clause, the court must weigh the private interest factors "entirely in favor of the preselected forum," as the parties have predetermined that the selected forum is the most convenient.  *Atl. Marine*, 571 U.S. at 64.  "As a consequence, a district court may consider arguments about public-interest factors only."  *Id.* at 64.  And "[b]ecause those factors will rarely defeat a transfer motion, the practical result" is that a forum-selection clause "should be given *controlling weight in all but the most exceptional cases*."  *Id.* at 63-64 (emphasis added; quotation

Gibson, Dunn & Crutcher LLP

marks omitted); *see also In re Facebook, Inc. S'holder Derivative Privacy Litig.*, 367 F. Supp. 3d 1108, 1119 (N.D. Cal. 2019) (explaining that, when a forum-selection clause governs, the court "should not consider arguments about the parties' private interests," including whether the chosen forum is "inconvenient or less convenient for themselves or their witnesses" (quotation marks omitted)).

This is not an exceptional case.  By agreeing in the Terms to resolve this dispute "exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County," Duffey Decl. Ex. B § 4.4, Rankwave "waive[d] the right" to argue that the private interest factors favor dismissal, *Atl. Marine*, 571 U.S. at 64.  The Court's analysis thus asks whether Rankwave has made a "clear showing of facts" that (1) South Korea is an "adequate alternative forum" and (2) the public interest factors weigh exceptionally in favor of South Korea.  Rankwave has not made those showings.  Moreover, even if the forum-selection clause does not apply and the private interest factors are therefore relevant, they *favor* litigation in this forum.

### A.    Rankwave Has Not Shown That South Korea Is An Adequate Alternative Forum.

Regardless of whether the private and public interest factors weigh in favor of dismissal, Rankwave's *forum non conveniens* arguments fail because it has not met its threshold "burden of demonstrating an adequate alternative forum," which exists only if "(1) the defendant is amenable to process there; *and* (2) the other jurisdiction offers a satisfactory remedy."  *Carijano*, 643 F.3d at 1224-25 (emphasis added).  Although Rankwave asserts that it is "amenable to service of process in South Korea" and "will consent to the jurisdiction of the South Korean courts," Park Decl. ¶ 11, it presents no evidence suggesting that a South Korean court would offer Facebook an adequate remedy.  In fact, Rankwave ignores this part of its burden.

The cases Rankwave cites are inapposite.  In *Honshu Shipping Co. v. M/V TRADE SALE*, 2005 WL 3676097 (N.D. Cal. Apr. 28, 2005), the plaintiff offered no evidence—and did not even argue— that Korea has "less favorable procedural or substantive law."  *Id.* at *3.  And in *Yang v. M/V Minas Leo*, 1994 WL 36921 (N.D. Cal. Jan. 25, 1994), the defendant offered a declaration addressing why a Korean statute provided an adequate remedy, and the plaintiff presented "no countervailing evidence."  *Id.* at *5.  The opposite is true here:  *Facebook* has submitted a declaration explaining why a Korean forum would be less fair, *see* Chung Decl., and *Rankwave* has offered no countervailing evidence.

Because Rankwave "ha[s] not established that [South Korea] will provide the plaintiff[ ] with a remedy," it has "failed to carry [its] burden of establishing an adequate alternative forum," and "the Court need not address whether the private and public interest factors militate in favor of [dismissing] the case." *In re Montage Tech. Grp. Ltd. Sec. Litig.*, 78 F. Supp. 3d 1215, 1223 & n.3 (N.D. Cal. 2015) (denying *forum non conveniens* motion). *Compare Bd. of Trustees of Leland Stanford Junior Univ. v. Chiang Fang Chi-Yi*, 2015 WL 5158749, at *7 (N.D. Cal. Sept. 2, 2015) (denying *forum non conveniens* motion because, among other reasons, defendant did not present evidence that Taiwanese courts would provide an adequate remedy), *with Cook v. Champion Tankers AS*, 2013 WL 1629136, at *7 (N.D. Cal. Apr. 16, 2013) (Tigar, J.) (concluding that a defendant "has shown that Hong Kong is an adequate alternative forum" because, among other reasons, the defendant submitted a declaration showing "that the Hong Kong Admiralty Court would offer [the plaintiff] an adequate remedy").

## B.   Rankwave Has Not Shown That The Public Interest Factors Clearly Weigh In Favor Of Dismissal.

Even if South Korea were an adequate alternative forum, Rankwave's *forum non conveniens* arguments still fail because Rankwave accepted the California forum-selection clause in the Terms. That clause receives "controlling weight" absent "exceptional" circumstances that do not exist here—namely, when the public interest factors "clearly" favor another forum. *Atl. Marine*, 571 U.S. at 64. These factors include "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Carijano*, 643 F.3d at 1232 (quoting *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1181 (9th Cir. 2006)). Rankwave has not made a "clear showing of facts" that these factors weigh in favor of South Korea. *Wood*, 588 F.3d at 1206. If anything, the balance of these factors weighs in favor of this Court.

*First*, "California has an interest in protecting corporations based in California," *Dole Food*, 303 F.3d at 1119, and also has an interest in protecting its citizens from the suspicious data privacy practices of foreign companies, *see, e.g.*, *CollegeSource*, 2015 WL 5638104, at *25 (explaining that California has a "governmental interest, in protecting the rights of private 'owner or lessee' of the computer or data" (quoting Cal. Penal Code § 502(e)(1))). To satisfy this prong, the Court need find

only an "identifiable local interest in the controversy," *Wood*, 588 F.3d at 1212, and California undeniably has one.  *See Tuazon*, 433 F.3d at 1182 ("[W]e ask only if there is an identifiable local interest in the controversy, not whether another forum also has an interest.").

*Second*, this Court—not one in South Korea—has expertise in California law, which governs this dispute and provides a remedy under the UCL.  *See* Duffey Decl. Ex. B § 4.4 ("[T]he laws of the State of California will govern these Terms.").

*Third* and *fourth*, Rankwave offers no evidence that litigation in South Korea would result in more efficiencies or fewer burdens than litigation in this Court, no evidence that the "congestion" in this Court favors a South Korean forum, and no evidence that it would be efficient—or even possible—for a Korean court to obtain records in California from third-party witnesses like Apple, Google, and Amazon (the host of rankwave.com).  As Rankwave admits, these two factors are at best "neutral," Mot. 23, or they actually weigh against dismissal given the number of California-based companies that would be involved in the discovery process.

*Fifth*, "the costs of resolving a dispute unrelated to a particular forum" do not weigh in favor of dismissal.  *Carijano*, 643 F.3d at 1232.  This case is not "unrelated" to California, Mot. 23, but instead involves disputes arising from Rankwave's substantial contacts with California, *see supra* Part I.A.

## C.    If Relevant, The Private Interest Factors Weigh In Favor Of California.

Even if this Court concludes that the forum-selection clause in the Terms does not apply and that the private interest factors are therefore relevant to the *forum non conveniens* analysis, *see Carijano*, 643 F.3d at 1224, California is still the proper forum because Rankwave has not made "a clear showing of facts" for these factors either, *Wood*, 588 F.3d at 1206.  "Private interests of the litigants include ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses, and cost of obtaining attendance of willing witnesses; and likelihood of a fair trial." *Dole*, 303 F.3d at 1119.

*First*, Rankwave makes only conclusory assertions about the "inconvenience" to witnesses of litigating in this Court, asserting that *its* witnesses are all in South Korea and that "virtually all of [them] would have to fly to and stay in the United States."  Mot. 21-22.  But to "establish[ ] inconvenience to witnesses, the moving party must name the witnesses, state their location, and explain their testimony

and its relevance." *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1193 (S.D. Cal. 2007) (citing cases).  Rankwave has not made that showing—or even tried.  It has not named a single witness, let alone described his or her location, expected testimony, and relevance.

Nor is it true that "*all* of the key . . . documents in this action are located in South Korea." Mot. 3 (emphasis added).  Relevant evidence is in California, including records related to Rankwave's requests in the "App Review" process, where Facebook's employees in California considered some of Rankwave's requests for permission to seek user consent for certain data.  *See* Parekh Decl. ¶ 23; *see also* Parekh Decl. ¶¶ 17, 22, 26 (explaining that the custodian of these and other business records is "located in California").  Likewise, third-party witnesses from Apple and Google are in California, and other third-party witness like Amazon and Microsoft are in the United States.  *See* Do Decl. ¶ 9; Ex. G.  And for the same reasons that this Court has jurisdiction over Rankwave, *see supra* Part I, a South Korean court would have no reason to reject this Court's judgment due to unfounded and incorrect "concerns" about personal jurisdiction, Mot. 22.

*Second*, Rankwave offers no facts to support its conclusory assertion that "[t]his Court will have far less ability to compel reluctant South Korean witnesses to testify than a court in South Korea."  Mot. 21-22.  Insofar as a Korean court would have more authority to compel testimony, it would have limited ability to actually enforce that authority because Korean courts have fewer powers to sanction parties and hold them in contempt.  *See* Chung Decl. ¶ 12.  Nor is this Court powerless to compel written or oral testimony from foreign witnesses.  *See, e.g.*, Fed. R. Civ. P. 26(b); Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters, 23 U.S.T. 2555 (1968).

*Third*, Rankwave offers no facts showing an impediment to a fair trial in this Court.  On the other hand, uncontroverted evidence shows that substantial impediments would exist in South Korea, as Facebook would have abridged discovery rights there, and litigants in South Korea: (i) do not have a right to a jury trial; (ii) are not automatically required to preserve potentially relevant documents, and must do so only after an adversary seeks and obtains a court order specifically identifying evidence that must be preserved; and (iii) are not presumptively entitled to conduct depositions and document discovery, which is particularly troubling here because Rankwave has made false statements to Facebook about the subject of this litigation, *see* Compl. ¶ 33.  *See generally* Chung Decl. ¶¶ 4-9.

The cases Rankwave cites all involved much weightier private interests favoring a foreign forum. *See* Mot. 21-22. In *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689 (9th Cir. 2009), a RICO case, the balance favored Europe because (i) the parties were mostly European companies, (ii) the dispute "related to European transactions," (iii) "none of [the] U.S.-based witnesses [had] information about the substance of the dispute," (iv) the district court was unfamiliar with the controlling "foreign law," and (v) the plaintiffs "had engaged in forum shopping." *Id.* at 693-96. In *In re Air Crash Over Mid-Atlantic on June 1, 2009*, 760 F. Supp. 2d 832 (N.D. Cal. 2010), a wrongful death suit involving a plane crash in the Atlantic Ocean, (i) all physical evidence of the crash was in France, (ii) only the French courts could order its disclosure, and (iii) only the French courts could consolidate and resolve all of the plaintiffs' claims. *See id.* at 844 & 845 n.11. And in *Cook*, the movant submitted declarations (i) identifying key witnesses and demonstrating that the "vast majority" of them resided in Asia, (ii) showing that "the material physical and documentary evidence is in Asia," and (iii) proving that none of the parties had control over certain key evidence "such that it could be brought to San Francisco." 2013 WL 1629136, at *7-8. Moreover, *none* of these cases involved a forum-selection clause where the parties had agreed to litigate in the court where the plaintiff filed suit.[7]

Here, by contrast, the parties agreed to litigate in this forum, the plaintiff is a California resident, California law applies, the disputes have a substantial relation to California, third-party witnesses are in California, all claims can be heard and resolved in this Court, and Rankwave offered only conclusory assertions about the location of its witnesses and evidence. And although Rankwave is a South Korean company, it contracted with Facebook, accessed and interacted with Facebook's Platform, commercialized the extracted data, and then rebuffed attempts by Facebook to get information—all of which ultimately harmed Facebook in California. *See supra* Part I.B. Quite simply, this is not a "South Korea-based dispute," Mot. 19, and Facebook does not argue that the presence of an American plaintiff is "in and of itself sufficient" to defeat Rankwave's motion, *id.* at 20 (quoting *Cheng v. Boeing Co.*,

---

[7] The same is true for the inapposite cases Rankwave cites to suggest that Facebook's preferred forum should receive no weight. *See* Mot. 20. In *Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656 (9th Cir. 2009), a wrongful death suit, the scuba diving accident "was arranged, documented, outfitted, undertaken, and investigated" in Mexico, and Mexican law applied to some issues. *Id.* at 665. And in *Lou v. Belzberg*, 834 F.2d 730 (9th Cir. 1987), the plaintiff brought a shareholders' derivative action—a type of case where the plaintiff's "choice of forum is given less weight"—where all "operative facts" occurred in a different forum. *Id.* at 739.

1  708 F.2d 1406, 1411 (9th Cir. 1983)).  The private interest factors do not "strongly" favor resolution

2  in South Korea, *Jensen*, 743 F.2d at 1334-35; they favor resolution in this Court.

3                          \*      \*      \*

4        Rankwave falls far short of meeting its "substantial burden" of proof to deny Facebook its home

5  forum, which Rankwave agreed to, and to send Facebook across the ocean to enforce its contractual

6  rights. *Carijano*, 643 F.3d at 1236.  Rankwave has not shown that Facebook could obtain an adequate

7  remedy in South Korea, let alone established that this case is among "the most exceptional" where the

8  usual "controlling weight" of the forum-selection clause is offset by important public interest factors.

9  *Atl. Marine*, 571 U.S. at 64.  Nor do the private interest factors, if relevant, weigh in favor of dismissal.

10  The Court should deny the motion to dismiss on grounds of *forum non conveniens*.

11  **III.    The Complaint States A Claim For Relief Under California's UCL.**

12        To state a claim for relief under Rule 8 and thereby survive a motion to dismiss under Rule

13  12(b)(6), a complaint must make a "short and plain statement of the claim showing that the pleader is

14  entitled to relief." Fed. R. Civ. P. 8(a)(2).  In assessing whether a complaint meets that standard, the

15  court accepts all factual allegations as true and asks whether, taken together, the allegations "allow[ ]

16  the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

17  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

18        Rankwave limits its Rule 12(b)(6) argument to the UCL claim (Count 3).  The UCL is a

19  "sweeping" and "intentionally broad" statute that "prohibits any unlawful, unfair or fraudulent business

20  act or practice." *Pirozzi*, 966 F. Supp. 2d at 920 (quotation marks omitted).  "Each prong—fraudulent,

21  unfair, and unlawful—is independently actionable." *Id.*  "[A] breach of contract may form the predicate

22  for a [UCL] claim, provided it also constitutes conduct that is unlawful, or unfair, or fraudulent." *In re*

23  *WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 928 (C.D. Cal. 2012) (quotation

24  marks omitted).

25        Although Rankwave's motion addresses all three prongs of the UCL, *see* Mot. 24-25,

26  Facebook's claim rests on only the "unfair" prong.  This prong prohibits conduct that fails a "balancing

27  test" that asks whether the conduct's harms outweigh its benefits.  *Lozano v. AT&T Wireless Servs,*

28  *Inc.*, 504 F.3d 718, 735-36 (2007).

Rankwave's conduct easily fails that test. Its false statements and refusal to provide proof of compliance with Facebook's policies have (i) "negatively impact[ed] Facebook's service;" (iii) damaged "Facebook's reputation, public trust, and goodwill;" and (iii) caused "Facebook to spend resources investigating and redressing Rankwave's wrongful conduct." Compl. ¶¶ 40-41. Rankwave does not even offer an offsetting benefit to these harms.[8] Without any "reasons, justifications, or motives, or utility . . . to weigh against the alleged harm," Rankwave's conduct is "unfair" under the UCL. *Pirozzi*, 966 F. Supp. 2d at 922 (quotation marks omitted); *see also Howard v. First Horizon Home Loan Corp.*, 2013 WL 3146792, at *5 (N.D. Cal. June 18, 2013) (Tigar, J.) (holding that a complaint "state[d] a claim under the unfair prong of the UCL" because it alleged, among other things, that the defendants refused to provide accurate information to the plaintiff).

Rankwave argues that the Complaint "cannot satisfy the unfair prong" because "Facebook has not alleged an antitrust injury, or harm to competition." Mot. 4; *see also id.* at 24. To justify this purported "antitrust injury" requirement, Rankwave cites *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 973 P.2d 527 (Cal. 1999), and argues that the California Supreme Court in that case "defined 'unfair' conduct as 'conduct that threatens an incipient violation of antitrust law, or violates the policy or spirit of one of those laws.'" Mot. 24 (quoting *Cel-Tech*, 973 P.2d at 545). But *Cel-Tech* itself explained that this definition applies *only* to "an action by a competitor alleging anticompetitive practices." *Cel-Tech*, 973 P.2d at 544 n.12. "Nothing we say," the court cautioned, "relates to actions by consumers or by competitors alleging other kinds of violations of the unfair competition law." *Id.*; *see also Lozano*, 504 F.3d at 735 ("This holding [in *Cel-Tech*] . . . was limited to actions based on unfairness to competitors."). Because Facebook does not rest the UCL claim on alleged anticompetitive practices, *Cel-Tech* and the other UCL cases Rankwave cites involving such practices are inapposite. *See* Mot. 24-25.

## CONCLUSION

The Court should deny Rankwave's motion to dismiss.

---

[8] All Rankwave offers in response to these alleged harms is mud-slinging, asserting that, because news outlets have been "questioning and/or criticizing Facebook's policies," Rankwave's data misuse could not possibly have harmed Facebook. Mot. 4 n.3. This argument is illogical: Rankwave cannot ignore or defy policies it agreed to, just because others have criticized those policies.

Gibson, Dunn &
Crutcher LLP

Dated: August 2, 2019

<div style="margin-left: 40%;">

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Ethan D. Dettmer*
     Ethan D. Dettmer

Attorneys for Plaintiff Facebook, Inc.

</div>