UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC.,<br><br>             Plaintiff,<br><br>      v.<br><br>RANKWAVE CO., LTD.,<br><br>             Defendant. | Case No. 19-cv-03738-JST<br><br>**ORDER DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS AND GRANTING FOR FAILURE TO STATE A CLAIM**<br><br>Re: ECF No. 12 |

Before the Court is Defendant Rankwave's motion to dismiss for lack of personal jurisdiction or inconvenient forum, or, in the alternative, to dismiss Plaintiff Facebook's claim under California's Unfair Competition Law ("UCL"). ECF No. 12. For the reasons stated below, the Court will deny the motion with regard to personal jurisdiction and inconvenient forum and grant the motion, with leave to amend, for failure to state a claim.

## I.      BACKGROUND

Plaintiff Facebook is an American corporation that operates a "social networking website and mobile application that enables its users to create their own personal profiles and connect with each other on mobile devices and personal computers." Complaint ("Compl."), ECF No. 1-1 at 13 ¶ 10. Facebook also provides a platform that enables application ("app") developers "to run apps that interact with Facebook and Facebook users." *Id.* ¶ 11. Facebook is incorporated in Delaware and has a principal place of business in Menlo Park, California. *Id.* ¶ 4.

Defendant Rankwave Co., Ltd. ("Rankwave") is "a South Korean corporation that provides computer programing services and data analytics solutions." *Id.* ¶ 5. Rankwave is headquartered in Seoul, South Korea, *id.* ¶ 5, where all of its employees work, ECF No. 12-1 ¶ 3. Rankwave conducts almost all its business in the Korean language. *Id.* ¶¶ 3-5. Rankwave develops and

United States District Court
Northern District of California

operates apps that businesses and consumers use to track and analyze activity on their Facebook pages.  Compl. ¶¶ 22-23.  Facebook alleges that, between 2010 and 2019, Rankwave operated at least 30 apps on Facebook's platform.  *Id.* ¶ 21.

As a Facebook user and developer of apps on its platform, Rankwave was subject to Facebook's Terms of Service ("TOS").  *Id.* ¶ 12.  The TOS prohibit "using Facebook to do anything . . . that 'is unlawful, misleading, discriminatory or fraudulent.'"  *Id.* ¶ 14.  Facebook's TOS included a forum selection clause ("FSC").  *See* ECF No. 16 at 19.  The parties dispute whether the FSC governs Facebook's claims.  As a developer of apps on Facebook's platform, Rankwave was also subject to Facebook's Platform Policies.  Compl. ¶ 15.  The Policies govern how developers may obtain and utilize user data, provide Facebook the right to audit their apps, and require them to provide Facebook proof of compliance with the Platform Policies upon request.  *Id.* ¶¶ 16-17.  Rankwave agreed to the Platform Policies as a condition of using Facebook's platform.  *Id.* ¶ 17.

On May 10, 2019, Facebook filed a complaint against Rankwave in San Mateo County Superior Court.  ECF No. 1 at 2.  Rankwave removed the complaint to federal court on June 27, 2019, pursuant to 28 U.S.C. §§ 1441(a) and 1332(a).  *Id.*  The complaint makes three allegations: (1) Rankwave breached agreements with Facebook established by the TOS and Platform Policies, (2) Rankwave breached the implied covenant of good faith and fair dealing, and (3) Rankwave engaged in unlawful, unfair, or fraudulent business practices under the UCL, Cal. Bus. & Prof. Code §§ 17200 *et seq.*  Compl. ¶¶ 47-59.  Facebook bases its allegations on Rankwave's failure to cooperate with Facebook's attempts to investigate Rankwave's use of Facebook user data and whether Rankwave used that data "to provide marketing and advertising services" in violation of Facebook policies.  *Id.* ¶¶ 27-39.  Facebook claims that Rankwave's conduct "negatively impact[ed] Facebook's service," "harmed Facebook's reputation, public trust, and goodwill," and forced it to expend resources "investigating and redressing Rankwave's wrongful conduct."  *Id.* ¶¶ 40-41.  Facebook seeks injunctive relief, damages, disgorgement, and attorneys fees and costs.  *Id.* at 22**.**

On July 12, 2019, Rankwave filed this motion to dismiss for lack of personal jurisdiction

or inconvenient forum, or, in the alternative, to dismiss Facebook's UCL claim.  ECF No. 12.

Facebook filed an opposition on August 2, 2019.  ECF No. 15.  Rankwave filed a reply on August

15, 2019.  ECF No. 23.  Facebook objected to the inconvenient forum arguments and evidence

that Rankwave raised for the first time on reply.  ECF No. 25.  The Court held a hearing on

September 18, 2019, and invited Facebook to submit a supplemental brief addressing the

arguments and evidence to which it objected.  ECF No. 29.  Facebook submitted that brief on

September 25, 2019, ECF No. 30, and the Court took the motion under submission.

## II.     SUBJECT MATTER JURISDICTION

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

## III.    PERSONAL JURISDICTION

### A.     Legal Standard

"In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the

plaintiff bears the burden of establishing that jurisdiction is proper."  *Boschetto v. Hansing*, 539

F.3d 1011, 1015 (9th Cir. 2008).  But where the "motion is based on written materials rather than

an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to

withstand the motion to dismiss."  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223

(9th Cir. 2011).  Further, "[c]onflicts between parties over statements contained in affidavits must

be resolved in the plaintiff's favor."  *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction

over persons."  *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).  In particular, where "no

federal statute authorizes personal jurisdiction, the district court applies the law of the state in

which the court sits."  *Mavrix Photo*, 647 F.3d at 1223 (citing Fed. R. Civ. P. 4(k)(1)(A)).  As

relevant here, "California's long-arm statute allows the exercise of personal jurisdiction to the full

extent permissible under the U.S. Constitution."  *Daimler AG*, 571 U.S. at 125; *see also* Cal. Code

Civ. Proc. § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent

with the Constitution of this state or of the United States.").  And because that "statute is

coextensive with federal due process requirements, the jurisdictional analyses under state law and

federal due process are the same."  *In re Boon*, 923 F.3d at 650 (quoting *Schwarzenegger v. Fred*

United States District Court
Northern District of California

1   *Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004)).

2       The due process inquiry generally "requires that each party 'have certain minimum

3   contacts' with the forum state 'such that the maintenance of the suit does not offend traditional

4   notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S.

5   310, 316 (1945)).  "The strength of contacts required depends on which of the two categories of

6   personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Ranza v.*

7   *Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).  "A court with general jurisdiction may hear *any*

8   claim against that defendant, even if all the incidents underlying the claim occurred in a different

9   State." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (emphasis in

10  original).  General jurisdiction over a corporation is appropriate only when the corporation's

11  contacts with the forum state "are so 'continuous and systematic' as to render [it] essentially at

12  home in the forum State." *Daimler AG*, 571 U.S. at 127 (quoting *Goodyear Dunlop Tires*

13  *Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  Facebook does not argue that the Court has

14  general jurisdiction over Rankwave.  ECF No. 15 at 11 n.5.

15      "Specific jurisdiction is very different." *Bristol-Myers*, 137 S.Ct. at 1780.  In order for the

16  court to exercise specific jurisdiction, the *suit* must arise out of or relate to the defendant's

17  contacts with the *forum*.  *Id.*  "In other words, there must be an affiliation between the forum and

18  the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum

19  State and is therefore subject to the State's regulation." *Id.* (citation and quotation marks omitted).

20  Accordingly, "specific jurisdiction is confined to adjudication of issues deriving from, or

21  connected with, the very controversy that establishes jurisdiction." *Goodyear,* 564 U.S. at 919.

22      Alternatively, "[c]onsent is considered as one of four traditional bases for the exercise of

23  personal jurisdiction over a nonresident defendant and . . .  is separate from the 'minimum

24  contacts' analysis." *Nobel Floral, Inc. v. Pasero*, 106 Cal. App. 4th 654, 658 (2003); *see also J.*

25  *McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011).

26      Facebook makes two arguments as to why the Court has personal jurisdiction over

27  Rankwave: 1) Rankwave consented to the Court's jurisdiction by agreeing to a forum selection

28  clause, and 2) Rankwave has purposefully availed itself of the benefits and protections of a

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1  California forum.  ECF No. 15 at 18, 15.  The Court will address the consent argument first,

2  because if Facebook is correct, the Court need not consider purposeful availment.

3     **B.     Rankwave Did Not Consent to Jurisdiction**

4        Forum selection clauses constitute consent to personal jurisdiction if "freely negotiated"

5  and not "unreasonable and unjust."  *Chan v. Society Expeditions, Inc.,* 39 F.3d 1398, 1406 (9th

6  Cir. 1994) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985)).  As a rule of

7  last resort, California courts construe ambiguous contract language "against the drafter."  *Lamps*

8  *Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417 (2019); *see also Royal Alliance Assocs., Inc. v. Mora*,

9  No. 3:15-cv-03706-JST, 2016 WL 926907, at *6 (N.D. Cal. Mar. 10, 2016).[1]

10       The operative forum selection clause is found in the English-language version of

11  Facebook's South Korean Terms of Service:

> If you are a consumer, or where required by applicable law, the laws
> of the country in which you reside will apply to any claim, cause of
> action, or dispute you have against us that arises out of or relates to
> these Terms or the Facebook Products ("claim"), and you may
> resolve your claim in any competent court in that country that has
> jurisdiction over the claim.  In all other cases, you agree that the
> claim must be resolved exclusively in the U.S. District Court for the
> Northern District of California or a state court located in San Mateo
> County, that you submit to the personal jurisdiction of either of
> these courts for the purpose of litigating any such claim, and that the
> laws of the State of California will govern these Terms and any
> claim, without regard to conflict of law provisions.

19  ECF No. 16 at 19 (emphasis added). [2]  Rankwave does not argue that the FSC is unreasonable or

20  unjust.[3]  Rather, it argues that the FSC does not apply.  ECF No. 12 at 23-26; ECF No. 23 at 6-9.

21  Rankwave reads the clause to apply only to claims asserted against Facebook, not those brought

22  by Facebook against someone else – in this case, Rankwave.  ECF No. 23 at 6.  Rankwave points

---

[1] While the parties do not explicitly say which law they believe should govern the interpretation of the FSC, they both cite federal law.  ECF No. 12 at 23-24; ECF No. 15 at 19-23.  The Court therefore applies federal law.
[2] While Rankwave cites Facebook's United States Terms of Service in its motion to dismiss, ECF No. 15 at 8, it acknowledges in its reply that the South Korean terms control, ECF No. 23 at 5 n.1.
[3] In its reply, Rankwave for the first time argues that interpreting the TOS in Facebook's favor would "violate Korean law."  ECF No. 23 at 7.  Because the Court "does not consider new facts or argument made for the first time in a reply brief," *TPK Touch Solutions, Inc. v. Wintek Electro-Optics Corp.*, No. 13-CV-02218-JST, 2013 WL 5289015, at *4 (N.D. Cal. Sept. 18, 2013) (citation omitted), it declines to consider this argument.

1    to the FSC's parenthetical flag of the word "claim" at the end of the first sentence, which defines it

2    as "any claim, cause of action, or dispute you have *against us* that arises out of or relates to these

3    Terms or the Facebook Products." *Id.* at 2 (emphasis added).  Rankwave argues that this

4    definition applies throughout the rest of the clause ("In all other cases, you agree that *the claim*

5    must be resolved exclusively . . . you submit to the personal jurisdiction of either of these courts

6    for the purpose of litigating "*any such claim*[]" . . . .").  *Id.*

7         Facebook does not dispute the definition of the word "claim."  Instead, Facebook asserts

8    that definition applies only within the first sentence because the clause "[i]n all other cases"

9    effectuates a break from what comes before.  ECF No. 15 at 19.  Facebook argues that the FSC

10   should be read in two separate parts: the first part applying to "consumers" who file suit "against"

11   Facebook, and the second ("in all other cases") applying to everyone else.  ECF No. 15 at 19.

12   This second category would, per Facebook's interpretation, cover claims asserted by Facebook

13   against Rankwave.

14        Perhaps the FSC language is just an example of inartful draftsmanship.  Other than claims

15   "aris[ing] out of or relat[ing] to the[] Terms or the Facebook Products," what claims could

16   someone who has agreed to the TOS, consumer or not, have against Facebook?  Nonetheless,

17   Facebook is a sophisticated entity and the Court is entitled to assume that sophisticated parties

18   choose their contract language carefully.  And Facebook chose not just to define "claim," but, in

19   the second sentence, to refer back to "the claim" and "any such claim."  Given that, the Court can

20   only conclude that the words of Facebook's form contract, as defined by Facebook, mean what

21   they say.  *See Venclose Inc. v. Covidien Holding, Inc.*, No. 16-cv-07372-EJD, 2017 WL 3335984,

22   at *6-7 (N.D. Cal. Aug. 4, 2017) (holding parties to "specially-defined terms" in their contract

23   even where those terms swept more broadly than federal patent law); 11 Williston on Contracts §

24   31.5 (4th ed. 2019) ("If freedom of contract means anything, it means that parties may make even

25   foolish bargains and should be held to the terms of their agreements.").  Therefore, the Court holds

26   that the FSC does not apply to Facebook's claims against Rankwave.

27        **C.    Rankwave Has Minimum Contacts With California**

28        The Ninth Circuit has established a three-part test for analyzing a claim of specific

United States District Court
Northern District of California

personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). Courts apply a two-step burden-shifting analysis:  "The plaintiff bears the burden on the first two prongs.  If the plaintiff establishes both prongs one and two, the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Boschetto*, 539 F.3d at 1016 (citation omitted).

Regarding the first prong, "[f]or claims sounding in contract, a purposeful availment test is used [. . .]; for claims sounding in tort a purposeful direction test is used." *In re Boon*, 923 F.3d at 651.  Both tests look to "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014); *see also Picot v. Weston*, 780 F.3d 1206, 1213 (9th Cir. 2015) (applying this principle in the purposeful availment context).

Facebook makes two contract claims against Rankwave and one claim under the UCL. "[C]ourts in the Ninth Circuit require a showing of purposeful direction for claims brought pursuant to the UCL." *Alexandria Real Estate Equities, Inc. v. RUNLABS (UK) Ltd.*, No. 18-CV-07517-LHK, 2019 WL 1934883, at *5 (N.D. Cal. May 1, 2019).  Because the Court grants Rankwave's motion to dismiss the UCL claim, only purposeful availment is relevant here.

### 1.    Rankwave Purposefully Availed Itself of California

The idea behind purposeful availment is that "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473 (quoting *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647 (1950)).  However,

"the formation of a contract with a nonresident defendant is not, standing alone, sufficient to create jurisdiction." *Boschetto*, 539 F.3d at 1017 (citing *Burger King*, 471 U.S. at 478). Rather, courts must take "a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King*, 471 U.S. at 479 (internal quotation marks and citation omitted). A contract that "creates a continuous course of dealing [is] distinguishable from an agreement after which the seller and purchaser go their separate ways." *Sustainable Ranching Partners, Inc. v. Bering Pac. Ranches Ltd.,* No. 17-CV-02323-JST, 2017 WL 4805576, at *5 (N.D. Cal. Oct. 24, 2017). In *Burger King*, the Supreme Court found purposeful availment based on a franchisee's "carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts" with the franchisor, emphasizing the franchisee's "voluntary acceptance of the long-term and exacting regulation of his business from Burger King's Miami headquarters." 471 U.S. at 480.

Two contracts are relevant to the purposeful availment analysis here: 1) Facebook's TOS, which Rankwave accepted when it created a Facebook Page and business account, Compl. ¶ 19, and 2) Facebook's Platform Policies, which Rankwave's "employees and agents accepted and agreed to be bound by" while they created and operated apps on the Facebook Platform, *id.* ¶ 20. Those Policies read, in relevant part:

> [Facebook] or an independent auditor acting on our behalf may audit your app, systems, and records to ensure your use of Platform and data you receive from us is safe and complies with our Terms, and that you've complied with our requests and requests from people who use Facebook to delete user data obtained through our Platform. If requested, you must provide proof that your app complies with our terms.

*Id.* ¶ 18. Rankwave admits that it accepted both sets of terms but alleges that it did not execute or perform the contracts in California and did not negotiate them. ECF No. 12 at 19, 26. It also alleges that, until 2018, the contracting party to Facebook's TOS with international users was Facebook Ireland. *Id.* at 6. Facebook cites this Court's decision in *Google, Inc. v. Eolas Techs. Inc.*, Nos. 13-cv-05997-JST, 13-cv-06003-JST, 2014 WL 2916621, at *3 (N.D. Cal. June 24, 2014) to argue that, by consenting to the TOS's choice-of-law provision, Rankwave

8

purposefully availed itself of California law.  ECF No. 15 at 12.

The Court first notes that, because it holds that the FSC does not apply to Facebook's claims against Rankwave, the choice-of-law provision does not govern this dispute.  Regardless, the provision should be evaluated among the aggregate contacts Rankwave has with California.  *Eolas* weighed the choice-of-law provision in the context of a 20-year licensing agreement in which the defendant, who had originally incorporated in California and entered into the agreement there, agreed to ongoing marketing, litigation, and bookkeeping obligations, in addition to paying patent royalties.  2014 WL 2916621, at *3.  In this context, a choice-of-law provision constituted additional evidence that the defendant had "chosen to avail itself of the benefits and protections of California's laws."  *Id.*; *see also Burger King*, 471 U.S. at 481-82 (explaining that a choice-of-law provision identifying the forum's laws as governing a contract the defendant was party to, in combination with the defendant's "20-year interdependent relationship" under the contract with a forum resident, "reinforced [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there.").

Rankwave argues that a choice-of-law provision is insignificant to the purposeful availment analysis when it exists within "a contract of adhesion forced on over a billion users."  ECF No. 23 at 9.  While the Court agrees that such a provision carries less weight in the purposeful availment analysis than it would within a carefully negotiated contract, it remains relevant to the analysis.  The cases Rankwave cites are not to the contrary.  In *National Resident Matching Program v. Electronic Residency LLC*, the contractual relationship between the parties involved no "future consequences" or "continuing obligations."  720 F. Supp. 2d 92, 100 (D.D.C. 2010).  In *Associated Business Telephone Systems Corp. v. Danihels*, the short-term nature of the contract weighed heavily in the court's analysis.  829 F. Supp. 707, 712-13 (D.N.J. 1993).  Here, Rankwave – which the Court assumes is a sophisticated entity given its 2017 acquisition by "a large South Korean entertainment company," ECF No. 15 at 10 n.4 – consented to the TOS and its choice-of-law provision for seven of the years during which it created and operated apps on Facebook's platform.  Compl. ¶¶ 19-20.  Because this consent created a "reasonable foreseeability of possible litigation" in the forum, *Burger King*, 471 U.S. at 482, it is a non-dispositive factor

weighing in favor of purposeful availment.[4]

The Court next turns to the Platform Policies.  Although Rankwave does not have the intricate contractual arrangement with Facebook that the franchisee and franchisor had in *Burger King*, its consent to the Policies establishes a "continuous course of dealing" between the parties. *Sustainable Ranching Partners*, 2017 WL 4805576, at *5.  In exchange for the "ability to develop and operate apps on the Facebook Platform," Compl. ¶ 45, the Platform Policies required that Rankwave and other developers complied with certain "obligations and restrictions," *id.* ¶ 16.  For example, Rankwave agreed to "obtain consent from the users of [its] apps before [it] can access their data on Facebook."  *Id.* ¶ 16.  It also agreed that "Facebook can audit [its] apps to ensure compliance" and to "provide proof of such compliance if Facebook so requests."  *Id.* ¶ 17.  Because Rankwave "continue[d] to agree to the Platform Policies as a condition of using Facebook's Platform," *Id.* ¶ 17, these obligations – and the benefits of using the platform – were continuous.  Facebook alleges that, throughout the course of its seven-year relationship with Rankwave, Rankwave created and operated at least 30 apps on the Facebook Platform, which were installed by "[h]undreds" of users in California.  ECF No. 17 ¶¶ 19-20 (alleging that one app "was installed by 322 users located in California at the time of the install").[5]  The parties "did not simply go their separate ways after executing the agreement."  *Salesforce.com*, 2019 WL 3804704, at *4 (citation and quotation marks omitted).

While it is unclear whether this was a term of the Platform Policies, Facebook also alleges that Rankwave submitted to a process called "App Review" in order to gain access to certain permissions and features related to its users' profiles.  ECF No. 17 ¶¶ 21-23.  Facebook claims that Rankwave submitted two of its apps to this process, during which they were "reviewed by members of Facebook's Developer Operations team located in California."  *Id.* ¶ 23.  Rankwave

---

[4] The fact that Facebook Ireland was party to the contract until 2018 is irrelevant, since it is the agreement to litigate in California, not the residence of the contracting party, that is pertinent to the minimum contacts analysis.  *See Walden*, 571 U.S. at 285.

[5] Rankwave alleges that it only operated ten apps on Facebook's platform.  ECF No. 23-2 ¶¶ 2-3. Because "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor" when evaluating a motion to dismiss, *In re Boon Glob. Ltd.*, 923 F.3d at 650, the Court takes Facebook's allegations as true.

United States District Court
Northern District of California

argues that the apps "happened to be reviewed randomly in California" and that "there is no argument or evidence that Rankwave had any interactions with reviewers in California."  ECF No. 23 at 10.  Given the well-known fact that Facebook is headquartered in California, the Court does not find the location of the review "random."  By voluntarily submitting its apps to an established California company for review in exchange for access to data, Rankwave "reach[ed] out" and "create[d] continuing relationships and obligations with citizens of another state."  *Burger King*, 471 U.S. at 473.[6]

Rankwave argues that its contractual relationship with Facebook is insufficient to establish personal jurisdiction under *Walden*.  *See, e.g.,* ECF No. 23 at 10.  But that case acknowledged that "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties."  *Walden*, 271 U.S. at 286.  What *Walden* prohibits is reliance on "a defendant's relationship with a plaintiff or third party, *standing alone*," as a sufficient basis for jurisdiction.  *Id.* (emphasis added).  But Rankwave's contracts with Facebook gave rise to continuing relationships and obligations not just with Facebook but with Facebook's users, whose data was central to Rankwave's business model.  Because hundreds of these users were alleged to be based in California, *Walden* does not prohibit jurisdiction.

Facebook also alleges various other contacts with the forum state.  Facebook claims that Rankwave targeted an advertisement to Facebook users in Los Angeles, San Francisco, and other locations.  ECF No. 17 ¶ 27.  Rankwave clarifies that it purchased this ad on behalf of a client.  ECF No. 23-2 ¶ 5.  Regardless, the Court does not find the purchase of a single ad that reached consumers in California as well as an unnamed number of other locations a meaningful contact with the forum.  Facebook also alleges that Rankwave made its apps available in the Google Play and Apple App stores, ECF No. 15 at 6-7, and that it used Amazon Web Services servers located in San Jose, California, *id.* at 13.  Given the ubiquity of these services, however, the Court does

---

[6] Many of the cases Rankwave relies on for its purposeful availment analysis are inapposite for this purpose because they involve the purposeful direction test.  *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017); *Erickson v. Neb. Machinery Co.*, No. 15-cv-01147-JD, 2015 WL 4089849 (N.D. Cal. July 6, 2015); *Rep. of Kazakhstan v. Ketebaev*, No. 17-CV-00246-LHK, 2017 WL 6539897 (N.D. Cal. Dec. 21, 2017); *Alexandria Real Estate Equities, Inc. v. RUNLABS (UK) Ltd.*, 18-CV-07517-LHK, 2019 WL 1934883 (N.D. Cal. May 1, 2019).

United States District Court
Northern District of California

not find Rankwave's use of them relevant to the minimum contacts analysis. *See Rosen v. Terapeak, Inc.*, No. CV-15-00112-MWF (Ex), 2015 WL 12724071, at *9 (C.D. Cal. Apr. 28, 2015) (declining to use availability in the Apple App Store as a basis for personal jurisdiction because it "would drastically increase the scope of personal jurisdiction in the California courts"); *cf. DFSB Kollective Co. Ltd. v. Bourne*, 897 F. Supp. 2d 871, 883 (N.D. Cal. 2012) (rejecting argument that maintaining accounts on California-headquartered websites was "something more" required to establish purposeful direction because "it would subject millions of persons around the globe to personal jurisdiction in California").

Nevertheless, the ongoing obligations of both parties – Facebook to allow Rankwave to use its platform to develop apps, and Rankwave to comply with Facebook's policies regarding user data and to provide proof of that compliance – constitute a "continuous course of dealing," *Sustainable Ranching Partners*, 2017 WL 4805576, at *5, that suffices to make a prima facie showing of purposeful availment.

## 2.    Facebook's Claims Arise Out of Rankwave's Activities in California

The second inquiry in determining specific jurisdiction is whether the plaintiff's claims arise from the defendant's activities in the forum. *Schwarzenegger*, 374 F.3d at 802.  The Court finds that Facebook has made a prima facie showing that Facebook's claims arise from Rankwave's conduct in California.

The "proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 at 290 (2014).  "[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Id.* at 291.  Moreover, the effect of the defendant's conduct must be "tethered to" the state, not to the plaintiff. *Id.* at 290.  In this circuit, courts apply a "but for" test to determine whether a claim arises out of defendant's forum-related activities. *Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001).  The question here is, but for Rankwave's contacts with California, would Facebook's injuries have occurred?

All three of Facebook's claims arise out of its contractual relationship with Rankwave – specifically, Rankwave's alleged "failure to provide proof of compliance with Facebook's policies

12

and its efforts to rebuff Facebook's contractual rights to discover the complete nature of

Rankwave's data practices involving Facebook users, including hundreds in California."  ECF No.

15 at 15.  To establish personal jurisdiction, a suit must arise out of more than "the establishment

of an agreement with a California entity alone."  *Am. Ins. Co. v. R&O Reinsurance Co.*, No. 16-

cv-03044-JST, 2016 WL 5930589, at *3 (N.D. Cal. Oct. 12, 2016).  Were Facebook alleging that

its injuries arise *solely* out of its contract with Rankwave, this would be insufficient to establish

jurisdiction.  *See id.* (dismissing complaint for lack of personal jurisdiction where "Plaintiff's

contentions regarding [Defendant's] contact with California are based exclusively on

[Defendant's] interaction with Plaintiff itself . . .").

But Facebook also ties its injuries to Rankwave's "data practices involving Facebook

users, including hundreds in California."  ECF No. 15 at 15.  Although Rankwave argues that less

than 0.18 percent of Rankwave app downloads occurred in California, ECF No. 23 at 15, it is

"inconsequential that only a sliver" of downloads occurred in the forum.  *Dubose v. Bristol-Myers

Squibb Co.,* No. 17-CV-00244-JST, 2017 WL 2775034, at *3 (N.D. Cal. June 27, 2017).  In

*Dubose*, the plaintiff argued that the defendants, two out-of-state pharmaceutical companies, had

failed to warn her of a particular drug's risks, inadequately tested the drug, and inadequately

reported the results of those tests.  *Id.* at *1.  Defendant argued that it was not subject to personal

jurisdiction because clinical trials for the drug occurred in many forums, California included.  *Id.*

at *3.  The Court rejected that argument, noting that "any event in the causal chain leading to the

plaintiff's injury is sufficiently related to the claim to support the exercise of specific jurisdiction."

*Id.*  The Court acknowledged that this application of the "but for" test "might have the effect of

creating specific jurisdiction in courts in numerous states . . . but only because important economic

and scientific activity connected to an alleged harm occurred in each of those locations."  *Id.* at *4.

So it is here.  Facebook alleges that Rankwave used its platform to access data for app users – a

small percentage of whom were in California when they installed Rankwave's apps – and went on

to improperly use that data "to provide marketing and advertising services" to third parties.

Compl. ¶ 27.  Rankwave focuses on Facebook's allegation that Rankwave misused that data in

South Korea.  ECF No. 23 at 11.  But Facebook has sufficiently alleged that some of this data

originally belonged to California-based users, a contact that is "part of the unbroken chain of events leading to Plaintiff's alleged injury." *Dubose*, 2017 WL 2775034, at *3. Rankwave also relies on *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017). ECF No. 23 at 15. But in that case, "what [was] missing . . . [was] a connection between the forum and the specific claims at issue." *Bristol-Myers Squibb*, 137 S. Ct. at 1781 (holding that no specific jurisdiction existed over the claims of nonresident plaintiffs who were not prescribed, did not obtain, and did not ingest a particular drug in the forum state). Here, Facebook would not be suing Rankwave for breach of contract and unfair business practices but for Rankwave's decision to reach out to a number of California users to harvest and allegedly monetize their data in South Korea.

Facebook has thus met is burden to make a prima facie showing that its injuries arose out of Rankwave's conduct in California.

### 3.   Personal Jurisdiction Is Not Unreasonable

Because Facebook has made a prima facie showing of purposeful availment and an injury arising from Rankwave's conduct in California, the burden shifts to Rankwave to establish that exercising jurisdiction over it would not be reasonable. *Boschetto*, 539 F.3d at 1016. The Ninth Circuit has identified seven relevant factors in determining the reasonableness of asserting jurisdiction over a nonresident defendant:

> (1) The extent of purposeful interjection into the forum state;
>
> (2) The burden on the defendant of defending in the forum;
>
> (3) The extent of conflict with the sovereignty of defendant's state;
>
> (4) The forum state's interest in adjudicating the dispute;
>
> (5) The most efficient judicial resolution of the controversy;
>
> (6) The importance of the forum to plaintiff's interest in convenient and effective relief;
>
> (7) The existence of an alternative forum.

*Federal Deposit Ins. Corp. v. British-American Ins. Co., Ltd.,* 828 F.2d 1439, 1442 (9th Cir. 1987).

The first factor weighs in favor of Facebook for the reasons discussed in the purposeful availment section. *See supra* III.C.1. The second factor weighs in favor of Rankwave given that

United States District Court
Northern District of California

all of its employees, software, records, and assets are located in South Korea.  ECF No. 12 at 14.

Facebook correctly notes that "modern advances in communications and transportation have

significantly reduced the burden of litigating in a foreign country."  *LiveCareer Ltd.,* No. 14-CV-

03336-JST, 2015 WL 1448505, at *8 (N.D. Cal. Mar. 31, 2015) (citation omitted).  Nevertheless,

this factor weighs in Rankwave's favor.

The third factor, conflict with sovereignty of defendant's state, is "at best neutral."  *Id.* at

*9 (citation omitted).  If this factor were dispositive, it would require all claims involving a

foreign defendant to be litigated in the defendant's forum.  *Id.*  Moreover, the complaint only

raises questions of California law.

The fourth factor, the forum state's interest, weighs in favor of Facebook because the

United States has an interest in enforcing its laws and protecting its citizens from misuse of their

data.  The fifth factor, efficiency as to the resolution of the dispute, weighs slightly in Rankwave's

favor because witnesses would have to travel from South Korea to California and documents

would have to be translated from Korean into English.  However, this factor "is no longer weighed

heavily given the modern advances in communication and transportation."  *Id.* (citation omitted).

While the sixth factor, the plaintiff's inconvenience, weighs in Facebook's favor, it is

afforded little weight.  *Id.*  The last factor, the existence of an alternative forum, weighs in favor in

favor of Facebook because Rankwave has not established the basis under which Facebook could

bring its claims in South Korea.[7]

Taken together, the Court finds that the exercise of jurisdiction is not unreasonable.

## IV.    INCONVENIENT FORUM

### A.    Legal Standard

A district court has "the discretion to decline jurisdiction in a case where litigation in a

foreign forum would be more convenient for the parties."  *Lueck v. Sundstrand Corp.*, 236 F.3d

1137, 1142 (9th Cir. 2001).  A party moving for dismissal on forum non conveniens grounds has

---

[7] The parties dispute whether Facebook or Rankwave bears the burden of proving this factor.  ECF No. 12 at 23; ECF No. 15 at 18; ECF No. 23 at 17.  The Court acknowledges some inconsistencies in the case law.  Regardless, Rankwave fails to carry its burden of proving an adequate alternative forum on its motion to dismiss for inconvenient forum.  *See infra* IV.

United States District Court
Northern District of California

1  the burden of showing (1) that an adequate alternative forum exists, and (2) that the balance of

2  private and public interest factors favors dismissal.  *Contact Lumber Co. v. P.T. Moges Shipping*

3  *Co. Ltd.,* 918 F.2d 1446, 1449 (9th Cir.1990) (citation omitted).  There is a "strong presumption to

4  honor a plaintiff's choice of forum that a defendant can rebut by making a clear showing of facts

5  which establish such oppression and vexation of a defendant as to be out of proportion to

6  plaintiff's convenience."  *Cook v. Champion Tankers AS,* No. 12-CV-01965-JST, 2013 WL

7  1629136, at *6 (N.D. Cal. Apr. 16, 2013).  The defendant bears a "heavy burden of proof" where

8  "the plaintiff is a United States citizen . . . ."  *Lueck*, 236 F.3d at 1143.

9          **B.      Discussion**

10         Because Rankwave does not meet its burden to overcome the presumption in favor of

11  Facebook's choice of forum, the Court denies the motion to dismiss for inconvenient forum.

12                **1.      Rankwave Shows That South Korea Is an Adequate Forum**

13         A defendant shows adequacy of forum when it demonstrates that (1) it will submit itself to

14  the jurisdiction of the forum, and (2) the forum would offer the plaintiff an "adequate

15  remedy."  *Cook*, 2013 WL 1629136, at *6 (citation omitted).  "[A] foreign forum will be deemed

16  adequate unless it offers no practical remedy for the plaintiff's complained of wrong."  *Lueck*, 236

17  F.3d at 1144.  Here, Rankwave alleges that is amenable to process in South Korea and would

18  submit itself to the jurisdiction of South Korean courts.  ECF No. 12-1 at 4.

19         Facebook contends that it would have "restricted discovery rights, weaker protections for

20  the attorney-client privilege, no right to a jury trial, and no right to compulsory process in South

21  Korea."  ECF No. 15 at 18; *see also* ECF No. 18 ¶¶ 4-12, 15.  "However, that the law, or the

22  remedy afforded, is less favorable in the foreign forum" does not make the remedy inadequate.

23  *Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 666 (9th Cir. 2009).

24  Rankwave submits evidence that Korea provides remedies for breach of contract and unfair

25  competition claims.  ECF No. 23-3.  Facebook disputes "whether Korean courts actually have

26  granted" these remedies, ECF No. 30 at 2 n.1, but it does not attempt to show that Korea would

27  offer "no practical remedy" for its claims, *Lueck*, 236 F.3d at 1144.  Rankwave has thus carried its

28

United States District Court
Northern District of California

burden to show that Korea would provide an adequate remedy.

However, this factor is far from determinative.  *Piper Aircraft Co. v. Reyno*, one of the cases Rankwave relies on, acknowledges that in the forum non conveniens analysis, "[e]ach case turns on its facts."  454 U.S. 235, 249 (1981).  The three cases Rankwave cites for this analysis weigh the facts differently, but all are attentive to where most of the witnesses and documents reside, whether the court would be applying foreign law, which forum has more of a local interest in the litigation, and whether the plaintiff is a U.S. resident.  The Court will now turn to these facts.

### 2.      Private and Public Interest Factors Weigh in Facebook's Favor

Private interest factors include "ease of access to sources of proof; compulsory process to obtain the attendance of hostile witnesses, and the cost of transporting friendly witnesses; and other problems that interfere with an expeditious trial."[8]  *Cook*, 2013 WL 1629136, at *7.  In two of the cases Rankwave cites, evidence existed in both forums.  *See Piper Aircraft*, 454 U.S. at 242; *Lueck*, 236 F.3d at 1147.  The *Lueck* court found that this factor favored the foreign forum, however, because much of the evidence in New Zealand was under the control of the New Zealand government and airline and thus would be difficult to access outside New Zealand.  236 F.3d at 1146-47.

Rankwave has alleged that all of its employees, software, records, and assets are located in Korea, and that 99 percent of its documents are in Korean.  ECF No. 12 at 28.  Unlike in *Lueck*, however, Rankwave is in control of this evidence and could bring it to California if needed.  Facebook, meanwhile, notes that much of its own evidence is in California and that South Korea has no right to compulsory process.  ECF No. 30 at 5; ECF No. 15 at 18.  On whole, the Court finds that the private interest factors cut both ways.

Public interest factors include "(1) local interest of lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs

---

[8] Facebook notes that courts do not consider private interest factors when a forum selection clause applies.  ECF No. 15 at 25.  Because the Court holds that the FSC does not apply, this argument is moot.

United States District Court
Northern District of California

of resolving a dispute unrelated to this forum.  *Cook*, 2013 WL 1629136, at *9.   Two of the cases Rankwave cites put much weight on the fact that the U.S. forum would need to use foreign law to decide the case.  *See Loya*, 583 F.3d at 665 ("In the court's view, the need to apply foreign law strongly favors dismissal based on forum non conveniens.") (emphasis omitted); *Piper Aircraft*, 454 U.S. at 259.  The *Piper Aircraft* court also noted that Scotland had a "very strong interest" in a case about an airplane crash that occurred in Scotland because "there is a local interest in having localized controversies decided at home."  454 U.S. at 260 (citation omitted).  Likewise, the *Lueck* court noted that the U.S. forum lacked interest in a lawsuit about a New Zealand plane crash, none of whose victims were residents of the U.S., whereas "the interest in New Zealand regarding this suit is extremely high."  236 F.3d at 1147.

Here, Facebook's claims arise under California law, so that factor cuts in its favor.  And unlike in *Piper Aircraft* and *Lueck*, both South Korea and California have a substantial interest in regulating alleged misuse of Californian and Korean Facebook users' data.  Lastly, unlike in both of those cases, the plaintiff here is a California citizen whose claims arise out of conduct related to the California forum.  The public interest factors thus favor Facebook.

While litigating this case in Korea would certainly be more convenient for Rankwave, it would not cause Rankwave "such oppression and vexation" as to be "out of proportion to [Facebook's] convenience."  *Cook,* 2013 WL 1629136, at *6.  Taken together, the Court finds that these factors do not overcome the strong presumption in favor of a U.S. plaintiff's choice of forum and denies the motion to dismiss for inconvenient forum.

## V.      FAILURE TO STATE A CLAIM

### A.      Legal Standard

A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

United States District Court
Northern District of California

18

1    defendant is liable for the misconduct alleged." *Id.* While this standard is not a probability

2    requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's

3    liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.*

4    (quotation marks and citation omitted). In determining whether a plaintiff has met this plausibility

5    standard, the Court must "accept all factual allegations in the complaint as true and construe the

6    pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN,* 393 F.3d 1068, 1072 (9th

7    Cir. 2005).

8           California's UCL "prohibits any unfair competition, which means 'any unlawful, unfair or

9    fraudulent business act or practice.'" *In re Pomona Valley Med. Grp.,* 476 F.3d 665, 674 (9th Cir.

10   2007) (quoting Cal. Bus. & Prof. Code § 17200 *et seq.*). The UCL's coverage is "sweeping," and

11   its standard for wrongful business conduct is "intentionally broad." *In re First Alliance Mortg.*

12   *Co.,* 471 F.3d 977, 995 (9th Cir. 2006). Each prong – fraudulent, unfair, and unlawful – is

13   independently actionable. *Lozano v. AT&T Wireless Servs., Inc.,* 504 F.3d 718, 731 (9th Cir.

14   2007); *Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163, 185 (1999).

15          **B.      Discussion**

16          Rankwave's last argument is that Facebook fails to state a claim under the UCL. ECF No.

17   12 at 31. The Court agrees and dismisses the claim with leave to amend.

18           While its complaint alleges that Rankwave's conduct "constitute[s] unlawful, unfair, or

19   fraudulent acts or practices" under the UCL, Compl. ¶ 58, Facebook states in its opposition brief

20   that this claim is limited to the law's "unfair" prong, ECF No. 15 at 30. Courts analyze claims

21   under this prong differently depending on whether they are brought by competitors or

22   consumers. *See Copart, Inc. v. Sparta Consulting, Inc.,* No. 214-CV-00046-KJM-CKD, 2015 WL

23   3622618, at *10 (E.D. Cal. June 9, 2015). A competitor bringing a claim must allege that the

24   defendant engaged in "conduct that threatens an incipient violation of an antitrust law, or violates

25   the policy or spirit of one of those laws because its effects are comparable to or the same as a

26   violation of the law, or otherwise significantly threatens or harms competition." *Suruki v. Ocwen*

27   *Loan Servicing, LLC*, No. 15-cv-00773-JST, 2016 WL 7741734, at *4 (N.D. Cal. July 22,

28   2016). A consumer, on the other hand, must allege facts showing that the defendant engaged in

United States District Court
Northern District of California

1    "a practice the utility of which is outweighed by the gravity of the harm to the victim." *Pirozzi v.*

2    *Apple, Inc.*, 966 F. Supp. 2d 909, 921-22 (N.D. Cal. 2013) (citing *S. Bay Chevrolet v. Gen. Motors*

3    *Acceptance Corp.,* 72 Cal. App. 4th 861, 886-87 (Cal. Ct. App. 1999)).

4         Facebook argues that the harm Rankwave's "false statements and refusal to provide proof

5    of compliance with Facebook's policies" inflicted on it outweighs any benefits of this conduct.

6    ECF No. 15 at 30-31.  But Facebook's opposition brief does not allege any facts or make any

7    argument suggesting why this Court should treat it as a consumer rather than a competitor for the

8    purposes of the UCL.  At the hearing, Facebook's counsel directed the Court to two cases

9    allegedly supporting its position.  The first, *BladeRoom Grp. Ltd. v. Facebook, Inc.*, 219 F. Supp.

10   3d 984 (N.D. Cal. 2017), does indeed note that "nothing in the UCL's text limits claims only to

11   consumers or competitors," *id.* at 995.  But the second, *Circle Click Media LLC v. Regus Mgmt.*

12   *Grp. LLC*, No. 3:12-CV-04000-SC, 2015 WL 6638929 (N.D. Cal. Oct. 2015), is less helpful to

13   Facebook.  That case confirms the proposition that the UCL can apply to corporations who have

14   "suffered injury in fact and . . . lost money or property as a result" of the alleged conduct.  *Id.* at *4

15   (citing Cal. Bus. & Prof. Code §§ 17204, 17535).  Unfortunately for Facebook, it goes on to

16   clarify that the state case law underlying that proposition holds that "sophisticated" entities that are

17   "individually capable of seeking relief" are *not* appropriate UCL plaintiffs.  *Id.*  The plaintiff in

18   one of those cases was a Silicon Valley semiconductor company, *see Linear Tech. Corp. v.*

19   *Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (Cal. Ct. App. 2007), while the potential

20   plaintiffs in the other were "sophisticated corporations, most in the Fortune 1000," *see Rosenbluth*

21   *Internat., Inc. v. Sup. Ct.*, 101 Cal. App. 4th 1073, X (Cal. Ct. App. 2002).  Given Facebook's

22   ranking in the Fortune 100, it clearly is not eligible for relief under the UCL under the theory it

23   currently alleges.

24        Because Facebook also does not allege any facts showing that Rankwave engaged in

25   "conduct that threatens an incipient violation of an antitrust law . . . or otherwise significantly

26   threatens or harms competition," *Suruki*, 2016 WL 7741734, at *4, the Court concludes that

27   Facebook has failed to state a claim under the UCL.  It thus dismisses Facebook's third cause of

28   action with leave to amend.  The amended complaint is due 21 days from the issuance of this

order. Failure to timely file an amended complaint will result in dismissal of the claim with prejudice.

**CONCLUSION**

Defendant's motion to dismiss is DENIED as to personal jurisdiction and inconvenient forum and GRANTED, with leave to amend, as to failure to state a UCL claim.

**IT IS SO ORDERED.**

Dated: November 13, 2019



JON S. TIGAR
United States District Judge