GIBSON, DUNN & CRUTCHER LLP
ORIN S. SNYDER (admitted *pro hac vice*)
  osnyder@gibsondunn.com
ALEXANDER H. SOUTHWELL (admitted *pro hac vice*)
  asouthwell@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

GIBSON, DUNN & CRUTCHER LLP
ETHAN D. DETTMER, SBN 196046
  edettmer@gibsondunn.com
KIM DO, SBN 324131
  kdo@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

Attorneys for Facebook, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**OAKLAND DIVISION**

| | |
|---|---|
| FACEBOOK, INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>RANKWAVE CO., LTD., a South Korean corporation,<br><br>        Defendant. | Case No.: 4:19-cv-03738-JST<br><br>**JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER**<br><br>**Case Management Conference**:<br>Date: January 28, 2020<br>Time: 2:00 p.m.<br>Place: Oakland, Courtroom 6, 2nd Floor<br>Judge: Honorable Jon S. Tigar<br><br>Complaint Filed: May 10, 2019<br>Complaint Removed: June 27, 2019<br><br>Trial Date: None set |

      Counsel for Plaintiff Facebook, Inc. ("Facebook") and counsel for Defendant Rankwave Co., Ltd. ("Rankwave") have met and conferred as required by Federal Rule of Civil Procedure 26(f) and this Court's Order setting the Initial Case Management Conference, dated November 19, 2019. Pursuant to Rule 26(f), Civil Local Rule 16-9, and the Standing Order for All Judges of the Northern District of California, the parties submit the following Joint Rule 26(f) Report and Initial Case Management Conference Statement.

1. <u>Jurisdiction & Service</u>

The sole defendant in this case, Rankwave, was served with process on May 30, 2019.

The parties agree that the Court has subject matter jurisdiction over Facebook's claims pursuant to the diversity statute, 28 U.S.C. § 1331. Facebook is a Delaware corporation with its principal place of business in California, and Rankwave is a South Korean corporation with its principal place of business in South Korea.

On November 14, 2019, the Court denied Rankwave's motion to dismiss as to personal jurisdiction and *forum non conveniens*, but granted the motion as to failure to state a claim under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*.

Rankwave continues to assert that this Court lacks personal jurisdiction over Facebook's claims against Rankwave. *See Metro. Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1064 n.1 (9th Cir. 1990) (explaining that if a court finds that a plaintiff has made a prima facie showing of personal jurisdiction based "on pleadings and affidavits alone," without conducting an evidentiary hearing, "the matter may be brought up again at trial"). Facebook disagrees.

2. <u>Facts</u>

**Facebook's Statement of Facts**

Rankwave accepted Facebook's Terms of Service ("Terms") when it created a Facebook account in February 2012, and remained bound by those Terms and all subsequent amendments thereto by continuing to operate an account until Facebook filed this lawsuit in May 2019. *See, e.g.*, Decl. of Michael P. Duffey Ex. B § 4.1, ECF No. 16 (Aug. 2, 2019) ("Once any updated Terms are in effect, you will be bound by them if you continue to use our Products following the effective date of the changes. . . . [I]f you do not agree to our updated Terms and no longer want to be a part of the Facebook community, you can delete your account at any time.").

Additionally, Facebook users like Rankwave that create an application or "app" on Facebook are called "developers," and they agree to comply with Facebook's Platform Policy. Rankwave created more than a dozen apps between 2011 and 2019, and accepted the Platform Policy each time it created a new app. Since 2018, the Platform Policy that Rankwave accepted required Rankwave (and all developers) to respond to Facebook's requests for proof of compliance with its policies and

to undergo an audit to confirm compliance upon request from Facebook.  The relevant language in the Platform Policy provides:

> [Facebook] or an independent auditor acting on our behalf may audit your app, systems, and records to ensure your use of Platform and data you receive from us is safe and complies with our Terms, and that you've complied with our requests and requests from people who use Facebook to delete user data obtained through our Platform.  If requested, you must provide proof that your app complies with our terms.

Platform Policy § 7.9.  Rankwave also agreed to Platform Policy § 6.1, which provides:  "Only use an entity's data on behalf of the entity (i.e., only to provide services to that entity and not for your own business purposes or another entity's purposes)."

Facebook attempted to exercise its audit rights under its contract with Rankwave after Rankwave was acquired by a large South Korean media conglomerate called CJ ENM Co. Ltd.  Subsequent to Rankwave's acquisition in 2017, Facebook received a security report through its data bounty program from an individual in South Korea, who was familiar with Rankwave's business and operations.  The individual reported that Rankwave had improperly retained Facebook data associated with Rankwave's various apps and that this data had been valued at approximately $9.8 million during the acquisition.  In March 2018, Facebook disabled a number of Rankwave's apps.

On January 17, 2019, Facebook sent Rankwave a formal request for information ("RFI") that, in general, requested information about Rankwave's apps and use of data obtained from those apps.  Facebook also sought to determine which specific Facebook data Rankwave used to sell advertising and marketing services, including whether any user data had been impacted.  Rankwave did not respond to the RFI.

On February 13, 2019, Facebook's counsel sent Rankwave a cease-and-desist letter ("C&D letter") that informed Rankwave that it had violated and continued to violate the Platform Policy by, among other things, failing to provide proof of compliance with Facebook's policies.  The C&D letter demanded that Rankwave:

- provide a full accounting of Facebook user data in its possession;

Gibson, Dunn & Crutcher LLP

- identify all individuals, organization, and governmental entities to which it had sold, or otherwise distributed, Facebook user data;

- provide a full record of the access logs and permissions it had granted third parties to access the data;

- delete and destroy all Facebook user data after returning it to Facebook; and

- provide Facebook with full access to all storage and related devices so that Facebook could confirm deletion and destruction of the data through an audit.

From February 17-27, 2019, Facebook's counsel and Rankwave corresponded over email, with Rankwave asking for—and receiving—multiple extensions of time to respond to the RFI, including because Rankwave's chief technology officer had resigned. Rankwave, however, never has provided the information that Facebook requested in the RFI and the C&D letter. Nor did Rankwave allow the audit. And Rankwave never contended in these communications that its "business model" had been previously approved by Facebook.

On May 10, 2019, Facebook filed this lawsuit in the Superior Court of California for San Mateo County, asserting three claims against Rankwave: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) violation of the UCL. Rankwave removed the case to this Court on June 27, 2019.

On November 14, 2019, the Court denied Rankwave's motion to dismiss as to personal jurisdiction and *forum non conveniens*, but granted the motion—with leave to amend by December 5—as to failure to state a UCL claim. Facebook chose not to file an amended complaint.

**Rankwave's Statement of Facts**

Briefly, Rankwave is a small South Korean internet start-up that creates software applications, including applications that in prior years ran on the Facebook Platform. In connection with running such applications on the Facebook Platform, Facebook would provide certain data concerning Facebook users to Rankwave. Rankwave analyzed such data in connection with its work on behalf of its clients—to provide such client insight into the types of people interacting with those clients' *own Facebook pages*. Rankwave's clients (a) also were users of Rankwave's applications; (b) had Rankwave managing their own Facebook pages for them; and (c) often hired Rankwave to manage

Facebook advertisements on those clients' own behalf. Rankwave's business practices have been open and known to the general public. If anything, Rankwave's work made the Facebook Platform more profitable for Facebook because Rankwave's work encouraged Rankwave's clients to become more active on Facebook.

In 2016, Facebook apparently suspected that Rankwave was violating one or more of its policies and came to Rankwave's office to perform an audit. At that meeting in May 2016, Rankwave explained in detail its business model to Facebook, including the Facebook data it had, how Rankwave used it, and how Rankwave made money. Facebook *approved* Rankwave's business model at that time, and expressly affirmed that Rankwave was not in violation of its policies (which, as relevant to this lawsuit, were vague and ambiguous at best).

Following Facebook's Cambridge Analytica scandal, numerous controversies and other scandals regarding Facebook's own use and selling of user information, and harsh attention from regulatory authorities throughout the world, Facebook now appears to be engaged in a face-saving campaign meant to try to blame others (such as Rankwave) for Facebook's own decisions with respect to user data in past years. As far as Rankwave can tell, despite Rankwave not having misused Facebook user data, and not having done anything with Facebook user data except that which was approved by Facebook, Rankwave is now apparently Facebook's desired scapegoat.

The principal factual issues in dispute are:

- Whether Facebook's Terms of Service and Platform Policies at issue were valid, enforceable contracts with Rankwave;
- How Rankwave used the data it received from Facebook;
- The meaning of Facebook's relevant provisions of its Korean Terms of Service and Platform Policies;
- Whether Rankwave's business practices breached any valid contracts Rankwave had with Plaintiff Facebook, Inc.;
- Whether Facebook employees approved of Rankwave's business model;
- Whether Rankwave's actions negatively impacted Facebook's services;

- The extent of Rankwave's purported damage to Facebook's "reputation," "public trust," and "goodwill" (*see* Compl. ¶ 41), after taking into account the damage Facebook's *own* user data usage and numerous scandals have caused its "reputation," "goodwill" and "public trust";
- What other damages, if any, Facebook has suffered by the conduct alleged (which Facebook appears to have engaged in itself in far more egregious ways, and that Facebook has long known numerous other third party app-developers engage in);
- The "value" of the data provided by Facebook to Rankwave;
- Whether Facebook's own conduct amounts to unclean hands, waiver, laches, or other equitable defenses;
- Whether Facebook terminated Rankwave's Facebook account, and the effect of such termination on Facebook's claims and requested remedies; and
- Whether Facebook provided notice of its revisions to its Terms of Service and Platform Policies to Rankwave, and to what extent.

3. <u>Legal Issues</u>

**Facebook's Statement**

The primary legal issues are:

- whether Rankwave breached Facebook's Terms, Platform Policy, and other policies that govern conduct on Facebook and the Facebook Platform, including by (i) failing to respond to Facebook's information requests and audit demands and (ii) using data associated with Rankwave's apps to offer advertising and marketing services.

**Rankwave's Statement**

At this early stage, Rankwave cannot identify all disputed points of law. Nevertheless, there are a number of disputed points of law identified by Facebook's complaint. First and foremost, whether this Court has personal jurisdiction over Rankwave, which Rankwave respectfully submits it does not but recognizes the Court has ruled otherwise. Other issues identified thus far include:

- Whether Facebook, Inc. (as opposed to Facebook Ireland) can assert a breach of contract claim for the time period in which it was not a contracting party to Facebook's Terms of Service or Platform Policies?

- Whether Facebook provided adequate notice of its revisions to its Terms of Service and Platform Policies to Rankwave. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).
- Whether Facebook's damages theory is appropriate under California law. *See Watson Labs., Inc. v. Rhone- Poulenc Rorer, Inc.*, No. CV 99-7947 AHM, 2001 WL 1673258, at *3 (C.D. Cal. Aug. 15, 2001) (precluding plaintiff from seeking disgorgement of lost profits in breach of contract action); *Lesney Dev. Co. v. Kendall*, 164 Cal. App. 3d 1010, 1021 (1985) ("under applicable principles of unjust enrichment plaintiff should recover at most its reasonable costs or the reasonable value to it of its services.").

4. <u>Motions</u>

On January 3, 2020, Facebook moved to strike the affirmative defenses in Rankwave's Answer. Rankwave filed a *partial* opposition on January 17, 2020. Briefing on that motion will be completed on January 24, 2020.

Facebook anticipates filing a motion for summary judgment.

Rankwave also anticipates filing a motion for summary judgment.

5. <u>Amendment of Pleadings</u>

Facebook does not currently intend to amend the Complaint.

Rankwave has requested leave to file an amended answer in light of Facebook's motion to strike.

6. <u>Evidence Preservation</u>

The parties confirm that their counsel have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"). The parties also have met and conferred pursuant to Federal Rule of Civil Procedure 26(f) regarding taking reasonable and proportionate steps to preserve evidence relevant to the issues in this action, including issuing litigation holds.

7. <u>Disclosures</u>

The parties have not yet made initial disclosures, but will do so within fourteen days after Rankwave files an amended answer.

8. <u>Discovery</u>

Facebook served its first set of Requests for Production on December 5, 2019. Rankwave has not yet responded to the requests. Responses to Facebook's first set of Requests for Production are currently due February 6, 2020.

Facebook served its first set of Interrogatories on January 17, 2020. Rankwave has not yet responded to the interrogatories. Responses to Facebook's first set of Interrogatories are currently due February 17, 2020.

The parties' positions as to the timeline for discovery are set forth below in Section 17. The parties intend to enter into a stipulated e-discovery order.

Rankwave intends to serve its discovery requests in the near future.

9. <u>Class Actions</u>

Inapplicable. The case is not a class action.

10. <u>Related Cases</u>

Facebook is aware of no related cases pending before this Court, another court, or an administrative body. Rankwave is likewise unaware of any related cases.

11. <u>Relief</u>

As set forth in the complaint, Facebook seeks:

(a) Injunctive relief restraining Rankwave from accessing the Facebook Platform;

(b) Injunctive relief requiring Rankwave to comply with Platform Policy 7.9 and to respond fully and accurately to Facebook's RFI and other requests for proof of compliance with Facebook's Platform Policy and Terms, including a forensic data audit;

(c) Injunctive relief requiring Rankwave to delete any and all Facebook data as appropriate after Rankwave complies with Platform Policy 7.9;

(d) Money damages, including but not limited to, actual, consequential, incidental, and exemplary damages in an amount to be determined in the course of this proceeding;

(e) Disgorgement of the value of the Facebook data that Rankwave has unjustly received and retained in violation of its obligations to Facebook;

    (f) Attorney's fees, costs, and expenses incurred in connection with investigating and redressing Rankwave's misconduct;

    (g) Pre-judgement and post-judgment interest; and

    (h) All other equitable or legal relief the Court deems just and proper.

Rankwave asserts that Facebook should take nothing from this action.

12. <u>Settlement and ADR</u>

The parties agree that referral to a formal ADR process is unlikely to be beneficial at this time. Both parties have signed, served, and filed an ADR certification, indicating their preference to discuss ADR selection with the Court at the Initial Case Management Conference. Rankwave would be willing to stipulate to mediation.

The parties are discussing potential case resolution options.

Facebook has identified the below key areas for discovery necessary to position Facebook and Rankwave to negotiate a resolution:

1. When Rankwave was acquired in 2017, was the information that Rankwave obtained from Facebook shared with the acquiring company? If so, was it shared for use outside of Rankwave's apps in any way?
2. Has Rankwave, or an entity affiliated with Rankwave, ever used data obtained from Rankwave's apps for purposes other than improving a Facebook user's in-app experience?
3. Has Rankwave ever sold data obtained from Facebook, whether in raw, aggregated, derived, or anonymized form?
4. Has data obtained by Rankwave's apps ever been combined with data from other platforms (e.g., Twitter) or combined with data from Rankwave's clients?
5. Has Rankwave ever shared a Facebook user's personal information with Rankwave's clients without first obtaining consent from the user?
6. Has Rankwave deleted all data that Rankwave obtained from Facebook?

13. <u>Consent to Magistrate Judge For All Purposes</u>

On June 28, 2019, Rankwave filed a Declination to Magistrate Jurisdiction. Neither party consents to having a magistrate judge conduct further proceedings in this case.

14. Other References

The parties agree that this case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15. Narrowing of Issues

The parties are open to stipulating to facts, including the authenticity of documents, but have not yet identified the specific facts.

16. Expedited Trial Procedure

The parties agree that this case is not the type that can be handled under the Expedited Trial Procedure of General Order 64, Attachment A.

17. Scheduling

The parties propose the following case schedule:

1. **August 30, 2020**: Document Discovery Cutoff.
2. **September 18, 2020**: Fact Deposition Cutoff.
3. **October 31, 2020**: Expert Disclosure Cutoff (if expert discovery is necessary).
4. **November 30, 2020**: Rebuttal Expert Reports Due.
5. **December 23, 2020**: Expert Discovery Cutoff.
6. **March 15, 2021**: Last Day to File Dispositive Motions.
7. **June 4, 2021**: Final Pretrial Conference.
8. **June 17, 2021**: Trial (if necessary).

18. Trial

If trial is necessary, the parties currently estimate that a jury trial would require 4-5 days.

19. Disclosure of Non-party Interested Entities or Persons

Rankwave filed its "Certification of Interested Entities" or persons on June 27, 2019, disclosing that Rankwave is a wholly owned subsidiary of CJ ENM Co., Ltd., and that no publicly held company other than CJ ENM Co., Ltd. owns 10% or more of the stock of Rankwave.

Facebook filed its "Certification of Interested Entities" or persons on November 20, 2019, disclosing that, other than as disclosed by Rankwave, Facebook is not aware of any additional

interested entities or persons.  No publicly held company owns 10% or more of the stock of Facebook.

20. <u>Professional Conduct</u>

Counsel for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

21. <u>Other</u>

Counsel are not aware of other matters that may facilitate the just, speedy, and inexpensive disposition of this matter.

|   |   |   |
|---|---|---|
| 1 |   | Respectfully submitted, |
| 2 | Dated:  January 21, 2020 | */s/ Ethan D. Dettmer* |

ETHAN D. DETTMER (SBN 196046)
 edettmer@gibsondunn.com
KIM DO (SBN 324131)
 kdo@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA  94105-0921
Tel.: 415.393.8200
Fax: 415.393.8306

ORIN S. SNYDER (admitted *pro hac vice*)
 osnyder@gibsondunn.com
ALEXANDER H. SOUTHWELL (admitted *pro hac vice*)
 asouthwell@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Tel.: 212.351.4000
Fax: 212.351.4035

*Counsel for Plaintiff Facebook, Inc.*

Dated:  January 21, 2020   */s/ John M. Neukom*

LANCE A. ETCHEVERRY (SBN 199916)
 lance.etcheverry@skadden.com
JOHN M. NEUKOM (SBN 275887)
 john.neukom@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, CA  94301
Tel.: 650.470.4500
Fax: 650.470.4570

ABRAHAM A. TABAIE (SBN 260727)
 abraham.tabaie@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA  90071
Tel.: 213.687.5000
Fax: 217.687.5600

*Counsel for Defendant Rankwave Co., Ltd.*

ATTORNEY ATTESTATION

I, Ethan D. Dettmer, am the ECF User whose ID and password are being used to file the JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER.  In compliance with N.D. Cal. L.R. 5-1(i)(3), I hereby attest that the concurrence in the filing of the document has been obtained from each of the other signatories.


By:  */s/ Ethan D. Dettmer*
     Ethan D. Dettmer


**CASE MANAGEMENT ORDER**

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions. [In addition, the Court makes the further orders stated below:]

IT IS SO ORDERED.

Dated:

The Honorable Jon S. Tigar
UNITED STATES DISTRICT JUDGE